152 So.2d 256 (1963)
Eads POITEVENT, Jr.
v.
Mrs. Elizabeth SCHRAM, Wife of Eads POITEVENT, Jr.
No. 1012.
Court of Appeal of Louisiana, Fourth Circuit.
April 1, 1963.
Rehearing Denied May 6, 1963.
Certiorari Refused June 14, 1963.
*257 Drury, Lozes & Dodge, James F. Quaid, Sylvia Roberts and James H. Drury, New Orleans, for plaintiff and appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Harry McEnerny, Jr., and Sydney J. Parlongue, New Orleans, for defendant and appellee.
Before McBRIDE, REGAN and YARRUT, JJ.
REGAN, Judge.
Plaintiff, Elizabeth Schram Poitevent, instituted this action endeavoring to nullify a judgment of separation from bed and board, predicated on abandonment, which was obtained by the defendant, Eads Poitevent, Jr., by default, that is, his wife's failure to answer the suit. Plaintiff insists that the suit was filed when she was too mentally incompetent to provide a defense therefor, which constitutes a vice as to form entitling her to have the judgment emanating therefrom annulled. She also asserted that the judgment was procured through fraud and ill practice by virtue of her husband's failure to disclose to the court that she was mentally ill when the abandonment occurred.
Defendant, in conformity with the terms of the judgment of separation, also acquired the permanent custody of their three minor children. Following the institution of this action to nullify the judgment of separation, the plaintiff, as an alternative thereto, filed a rule which ordered the defendant to show cause why she should not be awarded the custody of the children.
The defendant answered the action in nullity, denying that vices existed with respect to either the form or the substance of the judgment. He asserted that the plaintiff was fully competent when she abandoned the matrimonial domicile and when the suit for separation was served upon her and ultimately tried. The defendant also pleaded that the plaintiff was estopped from attacking the judgment in view of the fact that she voluntarily entered into a community property settlement pursuant to the judgment which she now seeks to annul, or more concisely, she fully acquiesced therein.
Then, assuming the position of plaintiff in reconvention, Poitevent asserted that in the event the court should pronounce that the judgment was a nullity, then the plaintiff, his wife, was indebted unto the community in the amount of $30,121.80, which she received in the partition of their property.
From a judgment dismissing both plaintiff's action in nullity and her petition for custody of their children, she has prosecuted this appeal.
Chronologically, the record reveals that the plaintiff and the defendant were married on August 4, 1944, and as a result thereof three male children were born who are now approximately 10, 12, and 15 years of age.
Between the years of 1957 and 1961, plaintiff was a patient of Dr. Conrad Wall, a psychiatrist, and during this interval she was hospitalized on innumerable occasions. When so confined, she usually, except on rare occasions, one of which we shall refer to hereinafter, enjoyed the privileges of an out-patient, which permitted her to leave the hospital and return thereto at her pleasure.
On August 4, 1961, Mrs. Poitevent was taken to DePaul Sanitarium on the advice of Dr. James Brown, a psychiatrist, who had been treating her for approximately six weeks prior to this time. She had been transferred to Dr. Brown by Dr. Wall, who expressed the opinion, as we understand it, that another doctor may enjoy more rapport with the patient.
On August 9, 1961, plaintiff escaped from DePaul by scaling the brick wall which encloses the grounds thereof. Thereafter she obtained cash from a local pawn shop in exchange for her jewelry, part of which she used to purchase bus transportation to Los Angeles. She traveled as far as either Dallas or Waco, Texas. In any event, upon *258 arrival, she telephoned friends who resided in Waco, who agreed to meet her at the bus station and bring her to their home.
While awaiting their arrival, she telephoned her husband to inform him that she intended to leave him and the children for their own good and to begin a new life for herself in the City of Los Angeles. The foregoing is the defendant's version of the telephone conversation which plaintiff does not dispute; however, she insists that she does not remember what she said during the course thereof.
When she had terminated the foregoing conversation, she decided, for reasons which are unimportant, not to visit with her friends, instead she boarded a bus whose destination was New Orleans and upon arrival here, she went to the home of her parents, where she resided until the spring of the following year. She has never returned to the matrimonial domicile.
On September 22, 1961, the defendant filed suit to obtain a separation from bed and board. The evidence inscribed in the record, although disputed, convinces us that the plaintiff was personally served with citation at the home of her mother and father on the following day.
On October 10, 1961, since no answer was filed thereto by the plaintiff, a preliminary default was entered. On October 16, 1961, the default was confirmed and a judgment of separation was awarded the defendant, wherein he also obtained the custody of their three children.
On January 10, 1962, plaintiff entered into a voluntary settlement of the community effects, which was consummated by a notarial act passed, for convenience, in her home. In addition, her paraphernal property was returned, and her husband agreed to pay alimony in the amount of $350.00 per month for as long as she needed it.
On May 3, 1962, which was almost four months after the community settlement, the plaintiff instituted this suit to nullify the judgment of separation.
Counsel initially asserts that the judgment is defective as to form since she was mentally incompetent when the suit was instituted and could not stand in judgment and, in addition thereto, she was not properly cited to appear to defend the suit.[1]
Plaintiff's prayer for nullity is predicated on LSA-C.C.P. Art. 2002, which reads in part:
"A final judgment shall be annulled if it is rendered:
"(1) Against an incompetent person not represented as required by law;
"(2) Against a defendant who has not been served with process as required by law and who has not entered a general appearance, or against whom a valid judgment by default has not been taken; * * *."
We are of the opinion that the plaintiff cannot avail herself of the rationale of LSA-C.C.P. Art. 2002 in support of her contention that the judgment of separation contains vices as to form in view of LSA-C. C.P. Art. 2003 which reads:
"A defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment on any of the grounds enumerated in Article 2002."
Plaintiff concedes that she was competent when she executed the community settlement, made pursuant to the judgment of separation; thus, this course of conduct constitutes acquiescence therein which *259 precludes her from relying on vices as to form in an action of nullity.
Counsel for the plaintiff also insists that the judgment contains a vice as to substance, which is a cause for invalidating the judgment in conformity with the provisions of LSA-C.C.P. Art. 2004 which reads:
"A final judgment obtained by fraud or ill practices may be annulled.
"An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practice."
It is plaintiff's contention in this respect that her husband, in asserting that she voluntarily abandoned the matrimonial domicile, concealed from the court that she was in DePaul Sanitarium on the date of the abandonment. Thus, the plaintiff rationalizes that the court was not apprised of her inability to decide to pursue a course of action that would constitute a voluntary abandonment of her home and family.
The law is too well-settled to require citation of authority in support thereof that he who alleges fraud must prove it.
We have assiduously reviewed the record and there is not a scintilla of evidence inscribed therein which would tend to support the plaintiff's allegation of fraud. In fact, the medical evidence abundantly preponderates to the effect that although the plaintiff was undoubtedly experiencing psychiatric disturbances, nonetheless, on August 9, 1961, the date of the abandonment, she was both lucid and competent. It will be recalled that it was on this day that she left DePaul and boarded a bus whose ultimate destination was the West Coast. She stopped in Waco, Texas or thereabouts and telephoned her husband to inform him of the abandonment.
Psychiatric treatment of itself is not evidence of mental incapacity and, therefore, we are unable to conclude, for obvious reasons, that it alone renders a person incompetent either to stand in judgment or to rationally decide upon pursuing a course of action.[2]
Therefore, in view of what we have said hereinabove, we are of the opinion that the trial court properly dismissed plaintiff's suit to nullify the judgment of separation.
We shall now consider the validity of the judgment which denied the plaintiff custody of their children.
Through the medium of a motion filed on May 22, 1962, the plaintiff endeavored to persuade the court to reverse its former award of permanent custody of the three children to their father.
There exists no doubt that an award of custody is always subject to modification; however, the applicant requesting a change or modification of a judgment which awarded permanent custody to the mother or father, must prove that the environment in which the children are living is detrimental to their welfare and best interest. In addition, thereto, the applicant must show that he or she is able to provide a more suitable environment.[3]
The whole tenor of the record leads us to the inevitable conclusion that the plaintiff has not borne this burden of proof. Conversely, it reveals that the children are residing in a comfortable home and are unusually well cared for by their father. During business hours, he has employed a housekeeper and other servants to care for the children. They are attending excellent schools and their medical needs are adequately provided for.
In short, the record leaves us with the indelible impression that the father has always *260 and is now providing the boys with love and affection, a healthy environment and the best physical facilities available to a man of his means.
Plaintiff, on the other hand, which is indeed unfortunate, has suffered from a psychiatric disturbance, from which she apparently has had a marked recovery since she no longer possesses the responsibility of caring for their children. However, the medical evidence adduced herein, reveals that it is possible for her to incur a relapse, and this could be hastened by resumption of the responsibility of caring for three energetic boys.
Therefore, we are of the opinion that the trial court exercised an abundance of wisdom in refusing to disturb the award of custody of the children to the defendant.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] Plaintiff failed to allege defective service in her petition for nullity; however, an effort was made to enlarge the pleadings by introducing testimony on the trial hereof to show that the plaintiff was not personally served. The defendant timely objected; however, the evidence was admitted despite this objection. Obviously the question of defective service was not properly before the court.
[2] Hightower v. Dr. Pepper Bottling Company of Shreveport, Inc. et al., 117 So.2d 642 (La.App.1960).
[3] Pepiton v. Pepiton, 222 La. 784, 64 So. 2d 3 (1953); Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955); Gentry v. Gentry, 136 So.2d 418 (La.App.1961).