HERGET, Judge.
Legal delays elapsing after a judicial decree granting a separation of the Plaintiff and Defendant, John A. Babin, Jr. filed suit against Ada Virginia Wakefield Babin praying for an absolute divorce and for the permanent custody of their minor child. After trial on the merits, for oral reasons assigned, reduced to writing, the Trial Court rendered judgment granting a final divorce of the parties and on her reconven-tional demand awarded the mother, Mrs. Ada Virginia Wakefield Babin, the permanent custody of the minor child, Barbara Babin. From which award plaintiff, John A. Babin, Jr., appealed.
The Trial Court reviewed in detail the issues involved for its determination in fixing the custody of the minor and its reasons for awarding custody to the mother, as follows:
“The next issue involves the custody of the minor child, a girl, now 8 years of age, and presently enrolled in the third grade at Brookstown Elementary School. The plaintiff seeks to amend or change the custody provision based on the mental instability of the defendant. The evidence indicates that the mother has for a considerable period of time suffered mental and emotional disturbances going back to 1950. We are going to concern ourself primarily with the condition of the mother during the past four or five years. The record reflects that in 1958 the mother was committed to East Louisiana Hospital, where she remained until the Spring of 1960. During this period of time the child was kept by the. father at the home of the paternal grandparents here in Baton Rouge. The record further shows that in the Spring of 1960, when the mother was released from the institution on convalescent leave, the child continued to remain in the home of the paternal grandparents by mutual consent. It was the intent and purpose of the mother at that time to prepare herself for a trade or occupation. She entered the Baton Rouge Trade School and studied drafting. For a short period in the Fall of 1960, she returned to the hospital and in the Spring of 1961, she was released. She concluded her schooling and in October of 1961, she was employed by the Louisiana Department of Highways in the Bridge Design Section as a draftsman. In September of 1961, the child was voluntarily returned to her by the husband and paternal grandparents. She was in the custody of her mother for the school year 1961-1962. In September of 1962, the mother incurred what we may refer to as a relapse and she was confined in the Baton Rouge General Hospital for a period of ten days and then on her voluntary commitment, she returned to Jackson where she remained for a period of thirty days, returning to Baton Rouge on or about October 14, 1962. Upon her return on this date, the custody of the child became a matter of conflict and disagreement between the parents. This suit was filed by the father on October 29, 1962, and a provisional custody order was signed granting unto him the custody of the said child. The question of permanent custody was referred to the merits.
“It is very difficult for a Court of Law to determine the mental condition, capabilities or inabilities of a particular individual and we must rely entirely upon the medical expert testimony relative to the same. The one medical expert who testified in this case was Dr. Lavender, who formerly served as the Superintendent of the East Louisiana Hospital, Jackson, Louisiana, and who presently is engaged in private practice. He was qualified and accepted as an expert in the field of psychiatry. He testified that in 1958 when Mrs. Babin was committed to Jackson that a Staff diagnosis of her condition was made as schizophrenic, chronic *67 paranoid. He testified that this diagnosis has continued to this date as is the custom, there being no information or no factors indicative of any change. He stated that if he had to make a diagnosis on this date, the diagnosis would be the same. He did, however, testify that in his opinion the mother of this child is capable and able of resuming her position as a mother and of resuming her position as a citizen in her work and in her employment. He further testified that the prognosis in the mother’s case is good because when she felt in September that this relapse was coming on, she made arrangements for the care of the child. She voluntarily submitted herself for treatment and he felt that a substantial gain had been made in working with Mrs. Babin because of the latter’s realization of her own problems.
“The question now is whether or not Mrs. Babin is in a position to take care of this minor child. We are of the opinion that based on the testimony produced, medical and lay, that she is. As to Mrs. Babin’s mental condition, the testimony of Dr. Lavender is not rebutted. When Mrs. Babin had the child with her, the child was well cared for. * * * ”
In his argument and briefs before this Court, counsel for Appellant maintains the Trial Court, through error, resolved the question of custody predicated upon the testimony of the psychiatrist that the mother was capable of properly caring for the child rather than determining as a fact the best interest of the child would be served by awarding the custody to the mother. Counsel’s argument is that the interests and desires of the mother in no way are to be considered in the resolution of the custody of the child but the sole basis for consideration thereof is the welfare and happiness of the child.
The law is .now well settled that the mother, especially of a child of the tender age of 8 years as is the case before us, is entitled to the custody of the child upon the dissolution of the marriage unless the evidence reveals, because of her moral unfitness or otherwise, the best interest and welfare of the child would be served by placing it in the custody of another. Unless and until the mother’s unfitness has been proven by competent evidence, and the child’s welfare would not be best benefited, she is entitled to the custody. As observed by the Trial Judge, the only evidence of the present mental competence of the mother in this case was the testimony of the psychiatrist, Dr. Lavender. His uncontradicted testimony was to the effect the mother is presently physically and mentally capable of caring for the child. As in all cases of mental disorders, he was unable to prognosticate the future permanence of this condition, though he was of the opinion because of her readiness to voluntarily place the child in the custody of the father and its paternal grandparents when confronted with mental disturbance would indicate her mental stability warranting his opinion she was in fact capable physically and mentally of caring for the child. From the lay testimony we observe the mother is now employed with the Department of Highways of the State of Louisiana as a draftsman and is performing her work not only satisfactorily but progressively improving. We further observe the lay witnesses testified she gave excellent care and attention to the child.
In this case, as in all cases involving the custody of minor children, unless and until it appears it is not to the interest of this child to be placed in the custody of the mother, she is entitled to that right
In the recent case of Lyckburg v. Lyclc-burg, La.App., 140 So.2d 487 where, as here, the mother had been under psychiatric care, had been in a mental institution and on the date of the trial involving the custody of their minor children she was under *68 psychiatric care, in granting the custody to the mother, we said:
“Conceding that prior to her hospitalization in 1957 plaintiff’s mental condition may have been such as to cast serious doubt upon her suitability as a person to be entrusted the care of her children, we are convinced that upon the date of the judgment rendered by the learned trial court herein, although plaintiff may not be said to have been fully recovered, she likewise has not been shown to be unfit by virtue of emotional instability. It will be recalled that no issue has been made by defendant respecting plaintiff’s moral fitness — the sole question presented being the contention that plaintiff is unsuitable because of mental deficiency.
“This being a matter of an initial custody award, the condition of the mother at the time of trial is the all important factor. We do not mean to imply that past conduct and circumstances are to be ignored and cast aside completely; but when dealing with an instance of the character involved herein, that is, where there is no charge of moral turpitude but only a question of mental capacity, the fact that a mother may have formerly been afflicted with emotional instability to the extent she was not then a proper person to have custody of children, such fact alone would not ipso facto deprive her of her paramount right to custody upon recovery from such disqualifying condition.”
In the very recent case of Poitevent v. Poitevent, La.App., 152 So.2d 256, upon evidence being adduced in support of the Court finding the mental unstableness of the mother was such that it was possible for her to incur a relapse and to burden her with the care and responsibility of three energetic boys could hasten this possibility or bring about a relapse, though presently she had apparently made a marked recovery from her psychiatric disturbance, the Court of Appeal, Fourth Circuit, refused to remove the boys from the custody of the father who, according to the evidence, was properly caring for them.
Fortunately, in this case the father, the paternal grandfather and grandmother are in a position to adequately and properly take care of this child. In the event the mother’s condition becomes such that she no longer can properly take care of the child, they will be on hand to take over. No doubt the motivating factor in the father in this instance seeking to have the custody of the child placed in him stems only from his desire to do that which is best for the child and without question such love and affection will continue to endure. Should the mother suffer a relapse, the question of the custody of the child may then be re-appraised by the Trial Court and adjudicated accordingly.
Judgment affirmed.