HARDY, Judge.
This action for separation was instituted by plaintiff husband and he appeals from judgment in favor of defendant rejecting his demands.
Plaintiff’s original petition alleged that defendant wife had been guilty of “such excessive and habitual intemperance as to render their living together insupportable * * It was further specifically alleged that over a period of four years prior to institution of suit “and particularly during the year 1964” the defendant wife had been guilty of excessive and constant indulgence in and consumption of alcoholic beverages. An amended petition alleged that by reason of the habitual intemperance of the defendant and prior to the filing of suit, petitioner had removed himself from the family home and was living separate and apart from the-defendant. A second amended petition alleged that in addition to defendant’s habitual intemperance she had been confined for medical observation and treatment, which' confinement and treatment plaintiff alleged upon information and belief to have been for psychiatric disturbances. The periods- and places of confinement and treatment were set forth in this supplemental pleadingas follows:
April 17 to May 7, 1962, in Willis-Knighton Hospital in Shreveport; October 25 to December 18, 1962, in: Schumpert Sanitarium in Shreveport; December 19, 1962 to January 14, 1963, in Schumpert Sanitarium in Shreveport; October 31, 1963 to November 29,. 1963, in Schumpert Sanitarium in Shreveport; and November 29, 1963 to February 14, 1964 in Central Louisiana State Hospital in Pineville.
Plaintiff further alleged that since on or about February 14, 1964, the defendant wife had been on convalescent leave from the Central Louisiana State Hospital.
Plaintiff prayed for judgment awarding him the permanent care, custody and control of the two minor children of the marriage.
In answer to plaintiff’s original and first supplemental petitions, defendant denied the charge of intemperance and by way of re-convention alleged that plaintiff had abandoned defendant and his children by re *91 moving himself from the matrimonial domicile, upon the basis of which allegation she ■prayed for judgment of separation. After filing of plaintiff’s second amended and •supplemental petition, an exception of no cause and no right of action was filed on behalf of defendant on the ground that •plaintiff had alleged defendant to be mentally incompetent, and, as a consequence, she had no capacity to be sued or stand in .judgment, and, further, that according to plaintiff’s allegations, the separation had occurred at a time when defendant was insane and confined to a mental hospital. An answer to plaintiff’s second amended ■petition was filed by defendant which specifically denied the allegations of confinement and treatment, and alternatively alleged that the actions of defendant relied ■upon as grounds for the separation were the direct result of her mental illness, and, as a consequence, constituted acts for which :she was not responsible.
Defendant’s exception of no cause and -no right of action was overruled, and after trial on the merits there was judgment in favor of defendant rejecting plaintiff’s demands.
Reduced to simple terms, despite the apparent complexity of the pleadings, this ■case involves (1) the validity of the charge •of habitual intemperance as ground for separation, and (2) the question of the defense of insanity on the part of defendant which would serve as a legal bar to a judgment of .separation.
On the first issue there can be no question :as to the conclusion that the defendant was ;guilty of habitual intemperance due to the ■excessive consumption of alcoholic beverages over a period of several years prior to the filing of this suit. The district judge noted that on trial of the case “it was abundantly shown that defendant on frequent occasions drank to excess * * It is pertinent to observe that this unfortunate indulgence was readily admitted by defendant in her testimony on trial. It follows that plaintiff is entitled to a separation unless the defense of mental incompetence has been adequately established, and we, therefore, proceed to a consideration of this question.
Upon conclusion of the trial it was agreed by counsel that the case should be held open for the taking of further testimony and the introduction of evidence relating to the mental condition of the defendant. Pursuant to this agreement a copy of the application for commitment of defendant to the Central Louisiana State Hospital dated November 18, 1963, the application for admittance which was prepared and submitted to the said facility by the Coroner for Caddo Parrish and a letter signed by Dr. Arthur L. Seale, Superintendent of the Hospital, dated February 16, 1965 and directed to counsel for defendant were filed and admitted in evidence. Also filed and admitted was a letter of date February 19, 1965, directed to the trial judge by counsel for plaintiff advising that counsel for defendant would not offer the testimony of Drs. Kerlin and Bender, the treating psychiatric specialists, in view of the fact that they had not seen the defendant since sometime prior to November, 1963.
It should be noted that the record, except for the papers relating to defendant’s commitment and the letter of Dr. Seale, is devoid of any evidence or testimony of expert or scientific nature with reference to defendant’s mental condition at and within a reasonable period prior to the institution of this suit. We regard this as most unfortunate because it places a responsibility upon this court to decide a medical question without the benefit of the expert opinions which could have been procured.
In his reasons for judgment the learned trial judge expressed the following opinion:
“In view of the fact that plaintiff had the defendant committed to the state hospital for the insane prior to the date of his separation from her, and the acts' which he alleges as the basis of his separation were committed either prior to her commitment to the mental insti *92 tution or while on convalescent leave, he is now estopped in any claim that the actions of. his wife, the defendant, were not the result of her insanity.”
After discussing and distinguishing Poitevent v. Poitevent, 152 So.2d 256, 259, from the instant case, the district judge reiterated his conclusion in these words:
“In this case, the plaintiff, having committed the defendant, his wife, to a mental institution, cannot now say that she was not insane at the time of her commitment; and as he has admitted in his petition that she was at home on convalescent leave at the time of these recent episodes of excessive drinking, which he alleges rendered his living with her insupportable, and for which reason he abandoned the family domicile, he is estopped to now contend that she was sane at that time.”
We are unable to agree with either the reasoning or the conclusion which justifies the basis for rejection of plaintiff’s demands upon the theory of estoppel, and, therefore, find it necessary to consider the merits of the defense of mental incompetence upon the basis of the record before us.
This case involves the necessity for examination and discussion of a problem which, as we understand, has been the cause of considerable perplexity even among skilled members of the medical profession in the field of psychiatry, namely, the relationship between chronic alcoholism and symptoms of mental aberration, incompetence and irrationality. It should be pointed out that the trial judge erroneously referred to the Central Louisiana State Hospital as a state hospital for the insane. LRS. 28:21 reads as follows:
“The hospital at Jackson, known as the East Louisiana State Hospital, the hospital at Pineville, known as the Central Louisiana State Hospital, and the hospital at Mandeville, known as the Southeast Louisiana Hospital, are designated as the institutions for the mentally ill and inebriate until such time as-separate or other institutions are established. (Emphasis supplied.)
“If the facilities permit, the superintendent of each shall maintain within-the framework of the hospital separate wards for the treatment of the inebriate.”
It is a matter of common knowledge that all persons who suffer from-mental illness are not necessarily insane. There are degrees of mental illness, some of which are temporary and exist for comparatively brief periods of time. There is-sometimes a relationship between mental illness and the excessive consumption of alcoholic beverages. Lawyers’ Medical Cyclopedia, Volume 3, Section 17.9, paragraph-3, “Psychoses due to alcohol.” A brief discussion of alcohol as a brain depressant and: the effects of intoxication, inter alia, upon judgment and mental efficiency and a resulting mental confusion, decreased efficiency and inability to perform simple tasks,, is found in the above cited text, Volume 3, Section 24.6, page 368.
There appears to be a reasonable basis-for the conclusion that alcoholic intoxication requires in some degree the same nature of treatment as cases of mental illness, and for this reason provisions for such: treatment are established with respect to-those hospital facilities which are otherwise-exclusively devoted to mental illness.
We further seriously question the reasoning of the trial judge that either the commitment papers or the letter of Dr. Seale, or both, justify the conclusion that the defendant was insane or mentally incompetent at or for a reasonable period of time immediately prior to the institution of this-suit.
It is true that the application for commitment to the Central Louisiana State Hospital in the matter of the mental illness of' Mary Rozell Currie states the opinion of the coroner and the other examining physicians-with reference to the cause of the patient’s- *93 mental illness as being “psychosis, manic depressive-manic phase.”
Without benefit of explanation as to the basis for this opinion, or explanation as to the meaning of the terminology used, we have been forced to rely upon medical definitions. Medical dictionaries and texts appear to be in general agreement, and we quote below the appropriate portions of the definitions found in Schmidt’s Attorneys’ Dictionary of Medicine (1965) :
“Psychoses. Any one of a number of mental disorders in which the personality is seriously affected * * *. A psychosis is more incapacitating than a neurosis and is less likely to terminate in a cure.”
“Manic depression. 1. The phase of depression in a patient who suffers from manic-depressive mental ailment, that is, a form of mental disorder in which there are alternating phases of mania (i. e. elation, excessive talkativeness, increased movements, etc.) and depression. 2. A state of mental depression characterized by uneasiness, worry, agitation, panic, and a foreboding of impending death or ruin.”
The term “manic phase” would appear to fall under the definitive derivations of the words “Mania” and “Manic”, which are defined in the work cited as follows:
“Mania. A mental disorder, usually a phase of a more comprehensive condition marked by exuberant elation, excessive talkativeness, exaggerated feeling of well-being, delusions, physical over-activity, etc.”
“Manic. Pertaining to, or affected with mania.”
The commitment contains the further observation as to the patient’s condition:
“Drinks; at times depressed and at other times she is excited; antagonistic towards her husband; very agressive (sic) and feels that everyone should agree with her, etc.”
As noted by the trial judge, the information obtained by the coroner was furnished by plaintiff husband. Just how much of the diagnosis was dependent upon this hearsay and unskilled information, and how much upon actual examination is not reflected by the application.
Turning to Dr. Seale’s letter we find that the professional staff of the Central Louisiana State Hospital reached “a diagnosis of schizophrenic reaction, chronic undifferentiated type * *
The work quoted, supra, defines schizophrenia as being:
“A mental disorder of considerable severity, marked by withdrawal from and indifference to one’s surroundings, delusions of personal power or of persecution, hallucinations, unpredictaable behavior, and deterioration of the personality. The term is practically synonymous with dementia praecox.”
Dr. Seale’s letter of February 16, 1965, noted that the patient was released to the care of her husband on February 14, 1964, after she had received “maximum hospital benefits.” It was recommended that the patient be continued on specific medications and be given follow-up care by her family doctor, but that she had been returned to the hospital on January 28, 1965, with a history of not taking the prescribed medications or seeing her doctor. The communication also contained the observation that according to the history given, the patient sometimes consumed as much as a fifth of alcoholic beverages a day.
It is practically impossible to make a satisfactory evaluation of the information contained in Dr. Seale’s letter without additional .explanation. If the patient was suffering from serious mental disturbances, either of a manic depressive or schizophrenic nature, it is difficult to understand why she was given convalescent leave from the hospital. There may be a distinction between a diagnosis of schizophrenia and that *94 of schizophrenic reaction, chronic undifferentiated type, which term is not specifically defined, and, therefore, is beyond the extremely limited scope of our understanding.
We readily admit our perplexity and confusion with respect to the medical aspects of the case before us. The record as made up is completely inadequate and unsatisfactory. We have no answer from the viewpoint of medical science to the controlling question as to whether plaintiff’s mental condition was caused by excessive indulgence in alcoholic beverages or resulted from some other entirely unrelated cause.
With some feeling of relief in being on firmer ground, we can reach conclusions on the legal principles involved.
Plaintiff’s petition, which was filed October 8, 1964, particularly alleged that defendant had been guilty of habitual intemperance in excessive and constant indulgence in and consumption of alcoholic beverages over a period of the past four years “and particularly during the year 1964”. The first supplemental petition alleged that because of defendant’s habitual intemperance he removed from the family home prior to the filing of suit and the date of •this separation appears to have been fixed as about the 18th of August, 1964. The ■final break in the marital relationship therefore occurred some six months after defendant’s return home from the Central Louisiana State Hospital, and it is evident that ■this was the 'crucial period in which her ■intemperance reached such a condition as to •render the continuance of the maritál relationship insupportable to the plaintiff husband.
First, it is clear that the plaintiff has established a basis for his action for separation, namely, the habitual intemperance of the defendant wife. On this point the burden of proof was upon the plaintiff, which burden has been adequately discharged.
The defense of mental incompetence is affirmative in nature and the burden for its support rests upon the defendant.
The record does not establish whether defendant’s treatment during her stay in the Central Louisiana Hospital was for mental illness or inebriation, nor, if the former, whether defendant was in a condition of mental incompetence which would support the asserted defense.
We think the district judge was in error in his observation that plaintiff’s second amended petition alleged the defendant had been confined for mental observation and treatment. As a matter of fact, the petition alleged that defendant had been confined on various occasions for medical observation and treatment. While it is true that this pleading alleged that the confinement and treatment had been for psychiatric disturbances, this allegation was qualified upon the basis of information and belief. In any event, as we have attempted to point out, there is a vast distinction between a psychiatric disturbance and a condition of insanity or mental incompetence. Reliable authority for this principle is found in Poitevent v. Poitevent (4th Cir., 1963, writs denied), 152 So.2d 256, in which the court stated:
“Psychiatric treatment of itself is not evidence of mental incapacity and, therefore, we are unable to conclude, for obvious reasons, that it alone renders a person incompetent either to stand in judgment or to rationally decide upon pursuing a course of action.” (Authorities cited, Pepiton v. Pepiton, 222 La. 784, 64 So.2d 3 [1953]; Decker v. Landry, 227 La. 603, 80 So.2d 91 [1955]; Gentry v. Gentry, 136 So.2d 418 [La.App.1961]).
The defendant has failed to establish the defense of insanity or mental incompetence and it follows that the judgment appealed from must be reversed.
For the reasons assigned, the judgment appealed from is annulled, avoided and set aside, and
It is now ordered, adjudged and decreed-that there be judgment in favor of plaintiff, Victor Monta Currie, Jr. and against the defendant, Mary Rozell Currie, decreeing *95 a separation "a mensa et thoro” between plaintiff and defendant, husband and wife.
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiff, Victor Monta Currie, Jr., and against the defendant, Mary Rozell Currie, awarding unto plaintiff the care, custody and control of the minor children, Victor Monta Currie, III, and Trudy Currie.
All costs of both courts are taxed against plainti f f-app ellant.
Rehearing denied.
GLADNEY, J., dissents.