REGAN, Judge.
This sociopsychiatric problem emanating from the facts hereof initially came to the attention of the Juvenile Court when assistance was sought by a Catholic priest from the Associated Catholic Charities relative to the placement of Mark Werling and Mary Catherine Werling, the children of John and Marilyn Werling. Miss Jacqueline C. Pattison of the Associated Catholic Charities was the complainant in the Field Interrogation Report of the Juvenile Bureau of the Department of Police, New Orleans, Louisiana, dated January 1, 1964. The reason for the interrogation was that Mark and Mary Catherine Werling were the victims of neglect and dependency as a result of the hospitalization of their mother on December 25, 1963, and Werling, their father, felt himself unable to adequately care for the children, thus necessitating the need for their placement in an institution.
Associated Catholic Charities agreed to provide institutional care for the children and accepted custody following a finding on February 3, 1964 by the Juvenile Court, that the children were in need of care and protection. Mrs. Werling was hospitalized in the psychiatric ward of Charity Hospital at the time of the Juvenile Court’s decision and there were no objections raised by their father, who was present in court.
In October, 1964, Mrs. Werling sought the return of the two children through aid of counsel, and her efforts were opposed by her husband.
A hearing occurred on November 16, 1964, and the matter was continued to enable Mrs. Werling to submit more recent medical-psychiatric information. The hearing was resumed on March 1, 1965, and on that date, the Court took the case under advisement. On July 12, 1965, the children were returned to the custody of their mother, under the supervision of the Probation Department of the Court.
From this judgment awarding custody of the children to -Mrs. Werling, her husband has prosecuted this appeal.
Werling’s dissatisfaction, of course, emanates from the Court’s ultimate disposition *873 of the case. He contends that on the basis of the facts adduced herein and predicated on the confidential reports submitted to the Juvenile Court by Associated Catholic Charities and Dr. Hugh English, a child psychiatrist, Mrs. Werling is incapable of caring for her children because of her mental illness, and it is in their best interest and welfare that they be removed from their mother’s custody.
In view of what we have related herein-above, the sole question posed for our consideration is one of fact, and that is whether the judgment of the Juvenile Court awarding custody of the children to Mrs. Werling is so erroneous and unsupported by the evidence as to warrant a reversal by us.
The record reveals that Mrs. Werling testified on direct examination and was vigorously cross-examined by Werling’s counsel for over an hour. In the course thereof, she answered all questions readily, without evasion and with complete coherence. She never lost her composure nor was there any indication of emotional disturbance. Her testimony indicates that she loves her children and possesses the desire and ability to continue to provide adequate care for them.
She further asserted that when her absence from home is necessitated, she arranges for the care of the children by babysitters. Mrs. Sephina Gerace, a neighbor who sat with the children on several occasions, testified that Mrs. Werling is a very good mother, and that the children were well mannered when left with her.
Dr. Uzee, the chief resident in psychiatry at Charity Hospital who treated Mrs. Wer-ling as an outpatient and who is familiar with her ward record as inpatient, was of the opinion that she is not now psychotic and that she is capable of caring for her children. On cross-examination, he related that some indication of a mental disturbance may persist; however, it is preferable that her children be with her. He was convinced that it was in the interest of a child to have a mother’s care and attention even if the quality thereof may be somewhat inferior. In effect, he reasoned that the children would be better off in the custody of their mother than if they were the recipients of the impersonal care of an orphanage.
Dr. Uzee pointed out that if more responsibilities are placed upon a person who has incurred a paranoid schizophrenic break, he frequently musters the emotional stability to solve his problems. He emphasized that Mrs. Werling is psychiatrically capable of caring for her children; however, he was unable to express as a definite professional opinion that she actually would care for them adequately. This, he insisted, was a social and not a psychiatric problem.
He informed the Court that Mrs. Werling is being sedated, and that it is in the interest of the children to recognize that their mother is sick.
The Court accepted Dr. Uzee’s professional opinion in view of his extensive training and experience despite the fact that he had not yet taken his Psychiatric Board Examination. Werling’s attorney also accepted Dr. Uzee as qualified and failed to weaken his testimony on cross-examination as to Mrs. Werling’s ability to resume the care of her children.
In Babin v. Babin,[1] the organ for the Court significantly observed:
“It is very difficult for a Court of Law to determine the mental condition, capabilities or inabilities of a particular individual and we must rely entirely upon the medical expert testimony relative to the same.”
The trial judge, after considering both the medical and lay evidence adduced herein, concluded that the custody of the children should be awarded to the mother, Mrs. Marilyn Werling, under the supervision of the Court’s probation officers.
*874 The judgment of the Juvenile Court, obviously, is not so erroneous and unsupported by evidence as to warrant reversal by us; therefore, the judgment is affirmed. All costs incurred herein are to be paid by the appellant.
Affirmed.

. La.App., 155 So.2d 65 (1963).