102 So.2d 472

Mrs. Elizabeth Jane Conarroe BOATNER

v.

Colonel Mark M. BOATNER, Jr., et al.

No. 43495.

April 21, 1958.

Rehearing Denied May 26, 1958.

Huckabay & Wall, Baton Rouge, for plaintiff-appellant.

Richard H. Kilbourne, Clinton, Bienvenu & Culver, P. A. Bienvenu, New Orleans, for defendants-appellees.

McCALEB, Justice.

Plaintiff, now the wife of Captain Frank Trinkle, U.S.A., is seeking to be awarded custody of her children, Stirling, age 10 and Bruce, age 8, issue of her former mar-riage with Major Mark Boatner, III, U.S. A., from whom she secured a divorce in Georgia on June 6, 1955. Major Boatner officially resides with his parents, Colonel Mark Boatner, Jr., retired, and Mrs. Boatner, who own and occupy Penrith Plantation in East Feliciana Parish. The children have been since 1954, and still are, in the possession and control of Major Boatner's parents, who are joined with him as defendants in the suit.[1] Three children were born of the marriage; the eldest child, Mark IV, was accidentally killed in Columbus, Georgia, in April of 1953, when he was struck by an automobile while crossing the street.

This is plaintiff's second attempt to secure legal custody of the children. Her first suit, a habeas corpus proceeding, was dismissed on an exception and this Court denied her application for a review of that judgment under our supervisory jurisdiction, being of the opinion that the status quo should not be disturbed pending an appeal, which would provide an adequate remedy. However, plaintiff did not pursue that course but elected instead to institute this custody proceeding.

The chronology of events in the married life of plaintiff and Major Boatner, which culminated in their divorce and gave rise to this suit, is as follows: The parties were

---

1. We are informed by counsel for Major Boatner that, since this appeal, he has remarried and has taken the children to live with him at West Point, New York, where he is presently stationed.

married in 1943, shortly after Major Boatner's graduation from West Point. He is a career army officer and has been on active duty continuously. Immediately following their marriage, the couple was stationed for ten months in New Orleans and at Fort Benning, Georgia. Major Boatner was then sent to Europe and their first child, Mark IV, was born while he was there. Later, plaintiff and the child joined him in Italy where they lived for about one year, returning to the United States in the summer of 1947, and, for the next few years, they were stationed in Washington, D. C., Philadelphia, Little Rock and then in Columbus, Georgia, where Major Boatner attended school at Fort Benning. During this period the two children, who are the subject of this suit, were born. Upon completion of his course at Fort Benning in May, 1952, Major Boatner was sent to Korea, plaintiff driving him to the West Coast from where he embarked, while the children stayed with the paternal grandparents at Penrith Plantation. After his departure, plaintiff took a slow, cross-country trip back to their home in Columbus, Georgia, making stop-overs in various places, visiting mutual friends. During part of this trip she was accompanied by her uncle. She passed by Penrith Plantation, picked up the two older children and brought them to Florida for a visit before returning to Columbus. Later, she drove over to the plantation from Columbus and brought back the baby.

Although the marriage had been far from ideal over these years, the relationship between the parties did not reach the stage of announcement of contemplated legal separation until a few months after Major Boatner had arrived in Korea. In August of 1952, plaintiff wrote him that, during each period of enforced separation, she had come to realize her need of complete freedom and that, after considerable thought as to the status of their marriage, she desired her independence and would like a divorce. This request apparently came as a surprise to Major Boatner and he wrote plaintiff immediately, entreating that she reconsider. Following much correspondence on the subject, plaintiff became persuaded that she should continue efforts to make the marriage work.

Then, in April of 1953, tragedy struck when Mark IV was killed by an automobile. Major Boatner came home from Japan for the funeral, which was held at Penrith Plantation, and afterwards prevailed upon plaintiff to return with him to Japan, where he was then stationed. The couple and the two children remained in Japan for 14 months, returning to the States in the summer of 1954.

The sojourn in Japan had no beneficial effects on the parties' unhappy relationship and, upon arrival here, plaintiff had definitely decided to sever their marital tie. Accordingly, when they reached Memphis, plaintiff went to Columbus, Georgia and

Major Boatner returned to Penrith Plantation with the children. Plaintiff gave her consent to this as a temporary arrangement, it being her understanding that the children would stay at the plantation until she could secure employment, or for a period not to exceed six months, and that, thereafter, she would take them to Columbus.

On the other hand, Major Boatner, while conceding that he knew that his wife expected to have the children returned to her custody, emphatically denies that he agreed to let her have them. At any rate, it is shown that plaintiff, on her return to Columbus, secured a secretarial job after completion of a refresher course in shorthand and, within the six month period, made demand for custody of the children. Her requests were denied, Major Boatner informing her that, if she went to Penrith Plantation and attempted to take them, she would be physically restrained by his parents. Plaintiff also testified, and her evidence on this point is uncontradicted, that, since her children have been at Penrith Plantation, she has written them at least once a week and, during certain intervals, wrote them daily; that she has sent them presents, pictures, clippings from the papers, and other things she thought they would enjoy; that, in every letter, she would beg the Boatners to write and give her some word or information as to their welfare but that there were no responses other than a monthly letter from a Mrs. Gunnell, Major Boatner's maternal grandmother, who was residing at the plantation when the children first arrived. Afterwards, when she left, it was just like "writing into a vacuum" according to plaintiff.

In June of 1955, plaintiff secured an uncontested divorce from ·Major Boatner in Georgia and, about a month later, she married her present husband, Captain Trinkle, a Harvard graduate, now a career army man stationed at Fort Benning. One child has been born of this marriage. The evidence shows that this is a happy marriage and Captain Trinkle testified that he will welcome the Boatner children into his home.

The defense alleged by the Boatners is that it is to the best interest of the children that they remain at Penrith Plantation, where, admittedly, they are being well cared for by Major Boatner's parents, and that plaintiff is not entitled to be the preferred custodian because she is a morally unfit person; that she is selfish and carefree and that her past conduct is such that it would be unsafe to place them in her charge.

After hearing the evidence, which is voluminous and unnecessarily extends into the minutest details of the married life of plaintiff and Major Boatner, the judge sustained the defendants' position and dismissed the suit. Plaintiff has appealed.

The law applicable to this case has been tersely expressed in Cannon v. Cannon, 225 La. 874, 74 So.2d 147, 148, thus:

"It is well settled in the jurisprudence of this state that in cases involving the custody of children the primary concern of the court is the welfare and best interest of the children (Kieffer v. Heriard, 221 La. 151, 58 So.2d 836; Sampognaro v. Sampognaro, 222 La. 597, 63 So.2d 11; Pepiton v. Pepiton, 222 La. 784, 64 So.2d 3; Wilmot v. Wilmot, 223 La. 221, 65 So. 2d 321) and that it is to the welfare and best interest of young children that the mother be awarded their custody unless she is shown to be morally unfit or otherwise unsuitable (Kieffer v. Heriard, supra; Pepiton v. Pepiton, supra)."

Accordingly, plaintiff is entitled to be preferred as custodian unless defendants have established their allegations of her unfitness.

At this juncture, it is apt to dispose of a contention made by defense counsel to the effect that the above stated jurisprudence does not obtain here but, rather, that the circumstances presented place it in the same category with that of Decker v. Landry, 227 La. 603, 80 So.2d 91. It was there held that, when one parent has been awarded permanent custody of children by judgment conformably with the provisions of the Civil Code, it is then incumbent upon the other parent, in seeking a modification of such a judgment, to prove that the conditions under which the children are living are detrimental to their interest and, further, that the applicant can and will provide a good home and a better environment if given their custody.

The principle applied in Decker v. Landry is inapposite. The Boatners have not been awarded the legal custody of the children, nor has plaintiff ever abandoned her right to custody. Conversely, the evidence shows without contradiction that plaintiff never consented to any sort of permanent arrangement, her testimony being that it was understood that she would be given the children as soon as she was able to make a home for them in Columbus and that the Boatners' custody would not extend for a period longer than six months. True, as stated, Major Boatner denies that he agreed to this, but he does admit that he knew that plaintiff would want their custody and it is certain that he did not understand that plaintiff at any time agreed to give the children permanently either to his parents or himself.

Hence, the only issue before us is whether defendants have sustained their allegations that plaintiff is morally unfit. We say "morally unfit" because a perusal of the record makes it clear beyond any doubt that plaintiff loves her children; that she is and has been desirous of regaining their

custody and that she and her present husband are fully capable of supplying these children with all the necessities of life in a social environment comparable to that of defendants.

█ There has been much evidence elicited respecting plaintiff's care of the children during the time that she was married to Major Boatner. But, other than the testimony of one Robert A. Ryan, formerly a junior officer assigned to Major Boatner's command while he was stationed in Italy, and Ryan's wife, to the effect that plaintiff was a poor housekeeper, permitting soiled diapers to be stacked in the babies' rooms; that the floors were usually dirty and the children unkempt (sometimes not being dressed with sufficient warmth), the proof is overwhelming that plaintiff was a competent and considerate mother who loved her children and handled them intelligently.

Mrs. Margaret Hale, the usual baby sitter for the children during the time the Boatners were living in Columbus, avouched that plaintiff was an excellent mother in every respect. Mrs. Barbara Salisbury, the second grade school teacher of Mark IV and a personal friend of the Boatners, pictured plaintiff as a fine and intelligent mother. To the same effect are the depositions of Mrs. J. P. Stewart, Mrs. Mollie S. Gates, Mrs. Ruth Battle Woolfolk, Miss Ruth Woolfolk, Mrs. J. F. Glass, Mrs. George S. Singleton and Mrs.

Helen B. Head, all of whom were friends of the Boatners during their marriage and in a position to testify as to plaintiff's fitness to care for her children, physically, spiritually and morally.

Other than Ryan and his wife and one Mrs. Martha Powell, who lived across the street from the Boatners in Columbus but who had never been in their home, there is hardly a suggestion that plaintiff neglected her children. Mrs. Powell said that she thought the children were poorly supervised and that she frequently saw them dirty and ill-clothed. But Mrs. Helen Huff, also a neighbor who testified for defendants, said that she never noticed that the children were dressed improperly and would not testify that plaintiff was an unfit mother. Her only criticism of plaintiff was that she was away from home frequently during the day. Another witness for defendants, a Mr. Nauss, Headmaster of the school in Columbus attended by two of the children, although stating from hearsay that it was the general impression of the faculty that the children received less than the average parental supervision, declared that they were exceptionally well-behaved, were superior both socially and academically and that their attendance and school work were good.

Thus, it is seen that the evidence falls far short of establishing that plaintiff has neglected her children in the past and that they were not properly reared. With the

rejection of this phase of defendants' charge against plaintiff, there is left for consideration only their indictment of her moral fitness. This is their main attack, much effort being made by their counsel to establish that she was unfaithful to Major Boatner during their marriage; that she exhibited neither love nor affection for him or her children and even that the child, Mark, was run over and killed as a direct result of her negligence.

After a careful analysis of the testimony given by Major Boatner and his witnesses, Ryan and wife, respecting plaintiff's purported opprobrious conduct during the marriage, we are firmly of the opinion that the charges are without probative support. Plaintiff, who was subjected to a relentless cross-examination in which her character was assailed directly as well as by questions suggestive of wrongdoing, denied emphatically innuendoes of adultery and promiscuous love-making. She did admit that she was never in love with Major Boatner.

The statements given by the witness, Ryan, corroborated by his wife, that plaintiff had engaged in flirtations with young officers; that she fell in love with a tennis player and that she, on one or two occasions, expressed her admiration and even a sexual desire for a certain Lieutenant Colonel, are not impressive. True, Major Boatner, understandably suspicious and re-

sentful of his former wife, expounds at some length in his testimony with suggestions that she indicated to him that she was in love with another man, the tennis player referred to by Ryan.

But there is no proof; Major Boatner's statements are his own theorems founded only on inferences drawn from conversations held with his wife during their strained relationship and, as stated, the Ryans' assertions appear to be gross deductions reached by attributing impure motives to harmless conduct or from indiscreet remarks said to have been made by plaintiff. It should be borne in mind that we are not, as defendants and the trial judge seem to think, determining whether plaintiff was at fault in severing her marital ties with Major Boatner. Their marriage is dissolved and the cause of its dissolution, absent proof of charges of moral degradation on the part of the wife, really has no pertinence to this case. Our only inquiry is whether she is a morally unfit person to rear her children.

After reading plaintiff's testimony, we are impressed with her honesty and sincerity. Indeed, if it be conceded that the incompatibility between plaintiff and Major Boatner, which both parties admit existed for a long period of time, was due only to plaintiff's fault and that she did not love him, as she admits, it would still not render her unworthy of her children.

A word should be said with respect to the charge that it was through plaintiff's negligence that the child, Mark IV, met his death, which we find to be absolutely unfounded. The suggestion is made in Major Boatner's testimony that the child's death should be attributed to plaintiff because she moved from the location where they had lived before he went to Korea to a place very close to one of the main thoroughfares in Columbus, which the children were required to cross to go to school. Thus, he reasons, the child was exposed to greater traffic hazards and this, coupled with an unfair innuendo drawn by defense counsel from the circumstance that plaintiff did not attend the child's funeral, which was held at Penrith Plantation, is made the basis for one of the arguments that plaintiff is not a fit person to raise her children.

The evidence shows without contradiction that plaintiff was grief stricken by the death of her child and was under constant sedation for several days thereafter. She says that she did not go to the funeral because she felt that the Major's parents did not wish her to be there. And, whether she was justified in this belief or not, there can hardly be any doubt that she was not on the best of terms with her husband's parents at that time and long prior thereto. Evidently, Major Boatner could not have believed at that time that there was anything unseemly respecting his wife's

lack of attendance at the funeral, because he immediately returned to Columbus and prevailed upon her to go with him to Japan, where he was then stationed.

Being of the opinion that plaintiff is entitled to the custody of her children, there remains only to fix the alimony to be paid by Major Boatner for their support. Plaintiff requests the amount of $150 per month. Major Boatner testified that that sum would be too much; that he has paid his mother and father $100 per month for the childrens' care, which he believes to be adequate.

We think that plaintiff's request is entirely reasonable and proper, being of the opinion that it would be well nigh impossible to feed, clothe and educate these children, aged 10 and 8, in accordance with their station in life, for less than $150 per month.

The judgment appealed from is reversed and it is now ordered that there be judgment in favor of plaintiff, Mrs. Elizabeth Jane Conarroe Boatner, now wife of Frank Trinkle, and against the defendants, Colonel Mark M. Boatner, Jr., Mrs. Mark M. Boatner, Jr., and Major Mark M. Boatner, III, awarding her the permanent care, custody and control of the minors, Stirling Boatner and Bruce Emerson Boatner. And it is further ordered that there be judgment in plaintiff's favor and against the defendant, Major Mark M. Boatner, III,

ordering him to pay alimony to plaintiff in the amount of $150 per month for the support of the two minor children, Stirling Boatner and Bruce Emerson Boatner, the first monthly payment to become due and exigible upon the finality of this decree. All costs are to be paid by defendants.

102 So.2d 477