TUCKER, Judge.
This is a custody suit in which plaintiff-appellant, Lucille Passman Penton, seeks the return of the custody of her four year old son surrendered to her former husband by consent at the time of the separation and divorce proceedings between them in 1969. On February 18, 1971, plaintiff petitioned for the permanent custody of her son, alleging a change of circumstances which enable her to care for her son. She alleged that she was married to Cecil A. Burris, Jr., and has established a home in Franklinton, Louisiana, and is able to supervise her child personally and properly rear him. The lower court denied custody to plaintiff, holding that she had not upheld the “double burden” incumbent upon her of proving that the circumstances in which the child is presently being reared were detrimental to him and that she could provide better surroundings.
Plaintiff has appealed from this ruling, alleging that the mother’s right to custody of her child, particularly to one of tender years, is superior to that of the father and should not be denied her unless she is morally unfit or otherwise unsuitable to have custody of the child; that it is only in the most exceptional circumstances, not shown in this case, that the custody of a young child is entrusted to the father. Plaintiff further alleges that a consent judgment does not constitute a judicial determination, and that it is only in the case of a judicial determination of the fitness or unfitness of either parent that the person seeking a change of custody should be held to the “double burden”.
The evidence shows that plaintiff is presently legally married to Cecil A. Burris, Jr., and that the Burrises live in a house trailer with ample room for the inclusion of a child, inasmuch as it consists of six rooms, two of them bedrooms. Mr. Burris’s income in the past year was approximately Twenty Thousand ($20,000.00) Dollars. Mrs. Burris is presently working in the Burris doughnut shop, but alleges that she is perfectly willing and able to discontinue this employment and to remain at home to take care of her child, should she be awarded his custody. Plaintiff’s witnesses testified uncontradictedly to plaintiff’s love for her child and her ability to rear him well and in pleasant surroundings.
*6 Plaintiff-appellant testified further that she had consented to defendant’s having custody of their son initially because he had threatened to kill her, their son, and himself, if plaintiff should not agree to his having custody of the child. These threats were corroborated by plaintiff’s sister, Mrs. Wilda P. Roden. Plaintiff testified, also, that she was making only Three ($3.00) Dollars a day at the time of the divorce proceedings and was not able financially to support her son at that time.
The record indicates the following in regard to the child’s present custody arrangements : That his father, the defendant Roy Penton works five days a week and one Saturday a month, arising at 6:30 every morning and leaving before his son has breakfasted; that he seldom comes home for lunch; that he does not return home until S :00 P.M. each evening, after which he travels six miles to feed his cows, which takes approximately one hour; that he is dating and planning to marry a sixteen or seventeen year old high school girl; that Mr. Penton’s mother, the child’s grandmother, takes care of him to the best of her ability in the grandparents’ house trailer; that, although he has his own bed, he sleeps with his grandmother as a usual rule; and that the -paternal grandparents take the child to church. There was also some evidence of the child’s anemia and pinworms.
Following the latest expression of the Supreme Court of Louisiana, handed down February 21, 1972, in Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972), this court reverses the decision of the lower court and awards custody of the child Kenneth Paul Penton to his mother Lucille Passman Burris, with proper visitation rights in the father Roy Penton.
In Estes v. Estes the Louisiana Supreme Court, with Justice Tate as the organ of the court, reversed the First Circuit of the Court of Appeal and reinstated the judgment of Judge Thomas B. Pugh of the Family Court of East Baton Rouge Parish, quoting him insofar as placing the custody of the children involved “in the ultimate best interest of two very lovely little children”. In Estes v. Estes a consent judgment was involved just as in the present case. The record of the original divorce proceedings in the instant case reflects that the award of custody was made as follows :
“Q. Through negotiations and through your attorneys, subject to the approval of the Court, it has been stipulated, or will be, that you are to have the permanent care, custody and control of the child. Do you desire the custody of the child ?
A. Yes.
. Q. It is further agreed that she will be allowed the privilege of having the child visit with her one week out of each month, Is that agreeable with you subject to the approval of the Court?
A. Yes.”
The Supreme Court further quoted Judge Pugh in Estes v. Estes, as follows: “. . . . the mother of these children loves them dearly, as does the father, . has never abandoned her children nor neglected the same and that as a mother of children of tender years, she has a greater right to the custody thereof than does the father”.
The Supreme Court cited the summarization of applicable principles set forth in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971) as follows:
“ ‘(1) The paramount consideration in determining to whom custody should be granted is always the welfare of the children. * * *
“ ‘(2) The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to cus *7 tody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father. * * *
“ ‘(3) When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed. * * *
“ '(4) Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof, * * * > ”
Our Supreme Court in reinstating the judgment of the low-court stated as follows :
“The trial court correctly held that, under the recited circumstances, the courts should apply the usual presumption that the interest of the children of tender years is best served by granting the mother the custody of the children of the marriage .... The mother’s temporary inability to care for them due to economic distress did not transform her into an unworthy parent, nor alter her custody as being in the ultimate best interest of these young children.
“It is true that stability in environment is an important value, so that a party seeking to change a considered determination of the permanent custody of children bears a heavy burden to justify such change as being in their best interest. Nevertheless . . . .”
No judicial determination was made by the lower court as to the fitness, suitability, or unsuitability of either parent to care for the child in the instant case. In the light of this fact and following the ruling of the Supreme Court in Estes v. Estes, as quoted above, this court holds that it was incorrect to rule that the mother, applying for the custody of her young child subsequent to the original custody determination, bears a “double burden” of proof. The record is replete with evidence to indicate that she will care for and love her child. According to the principles quoted above, this Court holds that it will be in “the ultimate best interest” of the young child Kenneth Paul Penton to transfer his custody to his mother Lucille Passman Burris, without any further showing, and despite the fact that his father and grandmother undoubtedly are taking care of him well and properly.
The judgment of the trial court is reversed and the permanent care, custody and control of the child Kenneth Paul Penton is awarded to the plaintiff, Lucille Pass-man Penton, (now Burris) subject to reasonable visitation rights with the child being vested in the defendant-appellee. The defendant-appellee is cast with all costs of court.
Judgment reversed and rendered.