311 So.2d 617 (1975)
Loretta Cormier SWANN, Plaintiff-Appellant,
v.
Clannie Ronald YOUNG, Defendant-Appellee.
No. 4965.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1975.
*618 Pugh, Buatt, Landry & Pugh by Kenneth O. Privat, Crowley, for plaintiff-appellant.
Edwards, Stefanski & Barousse by Nolan J. Edwards, Crowley, for defendant-appellee.
Before FRUGE, CULPEPPER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This appeal arises out of a habeas corpus proceeding brought by the plaintiff against her former husband to secure a change of custody of the minor children born of the marriage. From a judgment in favor of defendant-husband, plaintiff-wife has appealed.
Clannie Ronald Young and Loretta Cormier were married in Acadia Parish, Louisiana, on August 5, 1960. On May 3, 1972, Clannie Young filed suit for separation from bed and board against his wife, alleging, as the grounds therefor, abandonment on her part. Subsequently a judgment was rendered by default in favor of the husband on June 5, 1972. At this time, Clannie Young agreed that custody of the minor children be awarded to their mother, the plaintiff herein and that he would provide child support in the amount of $200.00 per month. No evidence whatsoever was offered on the question of custody.
Following the separation, plaintiff and her children moved to Gueydan, Louisiana, where they resided for a period of some three months at the home of Loretta Young's parents. Thereafter plaintiff became a resident housekeeper for one Sidney Broussard, an offshore worker with two sons. She and her children lived at the Broussard residence until December 3, 1972.
On this latter date the plaintiff voluntarily "surrendered" the minor children to her former spouse. The circumstances surrounding the defendant's subsequent physical custody of the children are disputed by the parties. Plaintiff-wife contends she learned that it was necessary to undergo an operation and that she merely requested her former husband's assistance in caring *619 for the children until she could physically recuperate and be in a better financial position to support the children. The defendant-husband, on the other hand, alleges that his wife merely called and asked him to pick up the children because she could not "stand any more". On this occasion, it is apparent from the record (although a copy of same was not introduced therein) that the wife herein signed a document purporting to be a transfer of custody. She testified, however, that she was of the opinion that the change would be temporary and that the real reason she signed same was to relieve her husband of the obligation of paying child support.
Regardless of what were the exact facts and circumstances surrounding the children being taken to live with their father, plaintiff-wife, in February, 1973, moved to Eunice for a short period where she became a cocktail waitress[1] in a local bar. Thereafter she moved to Opelousas to live in a house trailer with her sister, both of whom worked at the Tip Top Lounge in nearby Port Barre. During this period plaintiff alleges she tried to visit her children and telephone them at least once a week and that from January, 1973, until July, the children were with her on the weekends. Defendant-husband, on the other hand, testified she did not visit the children initially until about a month following the change of custody, and thereafter only came about every two weeks or once a month, staying only for a very short period.
On June 14, 1973, Clannie Young filed suit for a final divorce, based upon living separate and apart for more than one year following the judgment of separation, and sought permanent care, custody, and control of the minor children. Personal service was made on Loretta Young and an answer was filed on her behalf in July 1973, opposing the custody change. The trial date was set for November 30, 1973. Immediately thereafter plaintiff-wife herein moved to Alabama, giving as a reason that "job opportunities . . . and the pay scale was better". Here she apparently obtained a job as a secretary for a textile factory and worked for a three month period. Admittedly she did not leave a forwarding address with her attorney. During this period plaintiff-wife would keep in contact with her children by placing a collect call every week or two and writing an occasional letter. Admittedly, however, the children were seldom at home and she usually talked to her former husband. In December, 1973, plaintiff-wife became remarried to William M. Swann.
On December 3, 1973, the foregoing divorce matter was heard and judgment was rendered in favor of defendant-husband, together with permanent custody and care of the three minor children. This matter was taken up in the nature of a confirmation and the record reflects that no proof was offered on the question of custody, with the exception that defendant testified the children had been residing with him since December of the prior year. At the beginning of the hearing, the attorney representing the defendant-husband, indicated that the wife's attorney waived his presence by telephone several days prior and approved the judgment to be submitted in favor of the husband.
In this regard plaintiff-wife testified she did not instruct her attorney that she wanted her husband to have the legal custody of the children and that she did not get actual word of the change of custody until February, 1973. In April she returned to Louisiana and filed this present habeas corpus proceeding seeking return of custody of the children. At the trial herein plaintiff offered the testimony of four witnesses, each of which indicated plaintiff was capable of providing a proper home for her children and that she had been a good mother while she had the physical *620 custody of the children, taking them to church, keeping them well clothed, showing affection toward them, etc. They also indicated, however, that defendant-husband herein had also been a good father and provided a good home. Plaintiff's former attorney was not called to testify.
Plaintiff also testified at the trial to the effect that she was now married, living in a three bedroom trailer in South Carolina, and worked at a hospital and sold insurance. She further stated that she and her husband attended church, had a normal relationship, and that her husband had sought a job transfer to Louisiana. William Swann, however, did not testify. Plaintiff also admitted at trial to certain intimacies with other men between the time of her separation from the defendant herein and her later remarriage, but strongly contended that same were "discreet" and unobtrusive.
Defendant testified in his behalf to the effect that he was a principal at an Acadia Parish school, that he took his two older children (age 8 and 11) to school each day, and that his parents (with whom he and the children were living at this time) cared for the youngest child (age 3) during this period. His testimony further indicated that his children were not properly cared for by his wife during their marriage or separation and that he reluctantly voluntarily gave the wife initial custody of the children. He also stated that he continued to give his wife $75 a month (for an eleven month period) following the children having moved in with him.
The only other witness to actually testify on behalf of defendant was a Rev. Ivy Green. He indicated that he had recently visited the Young home often, that the children had "a mighty good home", that they were normal, healthy children, and that the family attended church regularly. It was further stipulated that four other persons would testify similar to that of this particular witness.
The sole issue before us is that of custody, i.e. the correctness of the trial court granting same to the husband.
The defendant-appellee, in alleging the correctness thereof, relies essentially on the so-called "double burden" rule, as originally stated in the case of Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955) and later applied in Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969); King v. King, 245 So.2d 560 (La.App.3rd Cir. 1971); Overstreet v. Overstreet, 244 So.2d 313 (La.App.4th Cir. 1971); Pickens v. Pickens, 186 So.2d 683 (La.App.4th Cir. 1966), writ refused 249 La. 581, 187 So.2d 741 (1966); Wells v. Wells, 180 So.2d 580 (La.App.3rd Cir. 1965); Poitevent v. Poitevent, 152 So.2d 256 (La.App.4th Cir. 1963), writ refused 244 La. 672, 153 So.2d 884 (1963). The doctrine of Decker v. Landry, supra, has also been recognized in the recent Louisiana Supreme Court cases of Nethkin v. Nethkin, 307 So.2d 563 (La. 1975); Abreo v. Abreo, 281 So.2d 695 (La.1973); Estes v. Estes, 261 La. 20, 258 So.2d 857 (1972), and Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971). The principle set down in the foregoing jurisprudence is essentially the following: A party seeking to change a prior "considered" decree or award of permanent custody must prove "that the conditions under which the children are living are detrimental to their interest and further that the applicant can and will provide a good home and better environment if given their custody."
Plaintiff-appellant, in turn, argues that the so-called "double-burden" rule is inapplicable in the present case for the reason that the custody decree handed down was actually one of consent or default and therefore not "considered", as required by Decker v. Landry, supra. As a result it is contended that the wife has the paramount right to the care, custody and control of the children since she was not proven morally unfit and incapable of caring for the children herein.
*621 Although the present viability of the so-called "double-burden" rule has been questioned recently as well as in the past[2], this court at the present time need not recognize[3], nor repudiate, per se, the principle, inasmuch as we find it inapplicable herein.
The double-burden rule has been explicitly held not to apply to consent judgments. Malpica v. Puig, 166 So.2d 546 (La.App. 4th Cir. 1964); See also Penton v. Penton, 260 So.2d 5 (La.App.1st Cir. 1972). More recently in Gulino v. Gulino, 303 So.2d 299 (La.App.1st Cir. 1974) the court held that a custody decree, by consent of the mother, was not a "considered determination" of custody as required by Decker v. Landry and therefore that the double burden rule was inapplicable. In Gulino the court stated:
"We interpret the foregoing language as holding that a considered determination of custody means a trial of the issue and decision thereon applying pertinent principles of law to the facts adduced. No such determination was made in this instance."
Very recently this court handed down Southern v. Southern, 308 So.2d 424 (1975), wherein a judgment by default was rendered in favor of a father, granting him separation from bed and board and awarding him the custody of four minor children. The wife in Southern had been personally served but did not respond to her husband's suit. This court, however, held that this default judgment was a "conered decree" based upon evidence taken prior to the judgment establishing: (a) that the wife left the marital home, abandoning the husband, and did not return; (b) that the children lived with the wife's mother, however, the husband and not the wife actually cared for the children with the assistance of the mother-in-law; and (c) that the wife rarely visited the children and then only for very limited periods.
In the present case, however, there was no evidence offered at the "default or consent" judgment granting custody to the father, in regard to the mother's fitness to have the care, custody and control of the children. We opine therefore that the "double-burden" rule does not apply.
Thus the only "considered decree" of custody herein was at the present trial on the habeas corpus proceeding. The custody award is therefore governed by the well settled principles, applicable to an "initial" custody determination, as most recently expressed in Nethkin v. Nethkin, 307 So.2d 563 (La.1975):
"`Universal and fundamental principles of the law support the proposition that the paramount consideration in custody cases is always the welfare of the child.
'In keeping with the law's aim to promote the child's welfare, the decisions have recognized that the child's best interest is served when custody is awarded to the mother, especially when the child is of tender years. Based upon this premise, the mother's right to custody is paramount. Thus custody should not be denied the mother unless she is morally unfit or otherwise unstable, and then only when the immorality or instability is such that these characteristics and her conduct adversely affect the child. It is only in exceptional cases that the child's best interest is served by changing custody from the mother to the father.
'When the trial judge has made a considered adjudication of permanent custody *622 based upon these principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of clearly proving that the continuation of the existing custody so adversely affects the child that the child's removal is justified.
'Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight, and his findings will not be disturbed in the absence of a clear showing of error. See also Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), and the cases cited therein.' 281 So.2d at 697. (Quoting from Abreo v. Abreo, 281 So.2d 695 (La.1973)).
As the foregoing authority makes clear, the mother's right is generally preferred but the essential consideration is to be given to the children's welfare and best interest. Ard v. Ard, 210 La. 869, 28 So.2d 461 (1946).
There is another rule of law and reason which we deem applicable to the case at bar. It involves the importance of the solidarity of the family unit and the reluctance courts have expressed over separating children of a family. Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969).

Notwithstanding the wife's paramount right over the husband to the custody of the young children, this right must give way to still another more paramount rightthe best interest of the children themselves." (emphasis added)
After quoting the foregoing jurisprudence the Supreme Court in Nethkin (in affirming both the trial court and the court of appeal) concluded that the interest of the two minor children therein would be best served by awarding the permanent care, custody and control to the husband, with liberal rights of visitation in the wife.
In the present case the trial judge also determined the best interest of the children will be served with leaving their custody in the care of their father, with whom they have been living for a period in excess of one and one-half years previous to the trial. It seems evident in reaching this decision that the district judge gave serious consideration to the circumstances under which the mother allowed the children to go with the father and her subsequent leaving the state despite pending litigation for the children's control and custody. In that connection he must have believed the husband's version of the events surrounding the children's surrender and concluded that this, coupled with the subsequent chronology of his wife's activities, indicated she was actually abdicating or deferring her preferred right of custody to the husband, for reasons of her own. The trial judge's determination in this respect is entitled to great weight. There has been no clear showing of manifest error on his part.
For the above and foregoing reasons the judgment of the trial court is affirmed at plaintiff-appellant's costs.
Affirmed.
NOTES
[1] In regard to former employment, the record indicates that at the beginning of her marriage plaintiff had worked as a secretary for a local school board and as a teller in a bank.
[2] Nugent v. Nugent, 232 So.2d 521 (La.App. 3rd Cir. 1970); Concurring opinion in Wells v. Wells, 180 So.2d 580 (La.App.3rd Cir. 1965).
[3] This writer, however, is of the firm opinion that the rule expressed in Decker v. Landry, supra, is still the law and that under the applicable circumstances we are constrained to follow it unless it is expressly changed by our Supreme Court.