340 So.2d 584 (1976)
Ronald Lloyd STEVENS
v.
Linda Sue Wilder STEVENS.
No. 10914.
Court of Appeal of Louisiana, First Circuit.
November 15, 1976.
Rehearing Denied December 20, 1976.
*585 Jas. D. Thomas, Baton Rouge, of counsel, for plaintiff-appellee.
Andrew J. Bennett, Jr., Baton Rouge, of counsel, for defendant-appellant.
Before LANDRY, EDWARDS and COLE, JJ.
EDWARDS, Judge.
This is a child custody proceeding.
Ronald Lloyd Stevens and Linda Sue Wilder Stevens were separated by judgment of the Family Court dated September 18,1970. The judgment awarded custody of the three minor childrenKaren (then age 5), Katherine and Kristine (then ages 4)to Ronald Lloyd Stevens. On October 15, 1971, Ronald Lloyd Stevens was granted a divorce from Linda Sue Wilder Stevens, which judgment continued custody of the children to their father, Mr. Stevens.
Linda Stevens filed a rule for change of custody on August 26, 1975. After a hearing on the matter, the Family Court rendered a decision on March 3, 1976 denying the rule and continuing custody in the father. From this ruling, Linda Stevens has appealed.
The issue presented for our consideration, although simply stated, is not simply resolved: Did the lower court err in denying the mother custody of her three minor female children?
From a careful review of the record, we summarize the following facts:
Linda Stevens left the marital domicile in August of 1970. Prior to this time, she had become involved twice with other men, the second incident occurring just before her leaving and precipitating same. Ronald Stevens told his wife to leave, and she voluntarily complied. The suit for separation filed by Ronald Stevens alleged as grounds the abandonment. Linda Stevens did not contest the separation nor the grant of custody. The divorce proceedings were likewise uncontested. Linda Stevens testified in this rule for change of custody that her reason for allowing her husband the custody of the children was that she was experiencing some emotional problems at the time and, because of the situation, needed time to pull herself together. Further, she did not want to subject herself, her children, and others involved to the exposure and embarrassment of litigation as threatened by her husband should she have sought custody.
Following his wife's departure in August, 1970, Ronald Stevens began looking for a housekeeper to help him with the task of rearing three young girls. In the meantime he left the children with his mother in Gladewater, Texas, making the 650 mile round trip every two weeks to visit for the weekend. In February, 1971, he hired a housekeeper and brought the children home.
The record reflects that Ronald Stevens has been a good father to his children and that there is a reciprocal love between him and them. He has devoted much of his spare time to activities with the children and, whenever he could, even included them on his dates and parties and barbeques with friends. He remarried in February, 1975. Diane Foret Stevens, his new wife, has two children of her own, likewise girls, and works fulltime now as a housewife and mother of five children. Diane Stevens helps Ronald's children with their homework, confers with their teachers, enrolled them during the summer in tennis and swimming lessons, supervises daily routines of household chores for all the children, and generally does an overall outstanding job of raising 5 young girls.
Linda Stevens has maintained a close relationship with her children since the separation. She has arranged parties for the children on their birthdays; taken them shopping for school clothes, Easter dresses, and for presents at Christmas; had Christmas for them with her family after they returned from Texas; split the cost with Ronald Stevens of their Christmas presents; conferred with their teachers; taken them *586 to the doctor and procured medicine for them. When the children stay with her on alternate weekends, she has them do household chores.
Mrs. Stevens admitted that she had in the past voluntarily sought and received psychiatric and psychological counseling for emotional problems. However, she maintained that she had overcome those earlier problems and no longer suffered any such disabilities. In this connection, Dr. Linda Marie Floyd, clinical psychologist qualified as an expert, testified that she had interviewed Mrs. Stevens on two occasions. She concluded that Mrs. Stevens has a positive, optimistic and realistic outlook in general, that she has good emotional control, that she is well-adjusted in her opinions and attitudes concerning family interaction, and that she had a comfortable relationship with children. Although she noted that Mrs. Stevens at times employed denial or avoidance as a defense mechanism, she found no problems warranting psychiatric or psychological treatment. She noted finally that Mrs. Stevens seemed not to seek permanent relationships with men and opined that married men might for this reason be attractive to her. The record further reflects that Mrs. Stevens, since the separation, was involved with a married man, though that relationship has been discontinued.
The three children testified that they would rather live with their mother than with their father and that they did not want to move to Alexandria (where Mr. Stevens had been transferred recently) because of the distance from their mother. Dr. Tommy Stigall, clinical psychologist, examined the children separately, two visits each. He concluded that the children more closely identified with their mother and that they were specific in their desire to be with her.
He further found that Karen, the oldest, suffers some emotional disturbance from frustration at not being with her mother. Lastly, he stated that there was no indication that their being moved to their mother's neighborhood would cause any disturbance, particularly since they had made many friends there in their past visits. However strong their desire to live with their mother, the children exhibited no antagonism toward Diane Stevens.
LAW:
The legal principles applicable to child custody cases were set forth in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603, 605 (La.1971):
"(1) The paramount consideration in determining to whom custody should be granted is always the welfare of the children. Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532 (1958) and jurisprudence therein cited; see also Moosa v. Abdalla, 248 La. 344, 178 So.2d 273.
(2) The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father. Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532 (1958); Boatner v. Boatner, 235 La. 1, 102 So.2d 472 (1958); Tullier v. Tullier, 140 So.2d 916 (La.App.1962) (citing numerous decisions of this court to such effect).
(3) When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed. Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969); Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955); Guillory v. Guillory, 221 La. 374, 59 So.2d 424 (1952); Nugent v. Nugent, 232 So.2d 521 (La.App. *587 1970) (citing numerous court of appeal decisions to such effect).
(4) Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interest of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Salley v. Salley, 238 La. 691, 116 So.2d 296 (1959); Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955); Guillory v. Guillory, 221 La. 374, 59 So.2d 424 (1952)."
For purposes of our review, we initially must determine whether there had ever been rendered a "considered decree" on the issue of custody prior to the trial of the matter herein. As earlier noted, neither the separation proceeding nor the divorce was contested by the wife; both resulted in default judgments. Further, the record on appeal does not contain the separation and divorce proceedings.
Where a trial of the issue of custody is had and a decision rendered based on the pertinent law as applied to the facts adduced, this would clearly constitute a considered determination of custody. Gulino v. Gulino, 303 So.2d 299 (La.App. 1st Cir. 1974).
Likewise, a judgment by default may be a "considered decree" of custody, depending upon what evidence is taken at the proceedings prior to the rendition of judgment. If there is evidence taken at the default proceedings in regard to the defendant's fitness to have the care, custody, and control of the children, then the judgment rendered would be a "considered decree." Southern v. Southern, 308 So.2d 424 (La. App. 3rd Cir. 1975). Where no evidence of fitness for custody is offered at the default proceedings, the judgment granting custody is not a "considered decree." Lemons v. Lemons, 325 So.2d 734 (La.App. 1st Cir. 1976); Swann v. Young, 311 So.2d 617 (La. App. 3rd Cir. 1975).
Finally, there is the question of whether or not a judgment, default or otherwise, is presumed to be a "considered decree." Because, as a matter of practice, custody awards are often rendered incidental to the rendition of the judgment of separation or divorce, with no evidence being offered on the issue of custody, we will not presume, in the absence of any evidence in the record on appeal, that such an award of custody was a considered decree. Thus the party alleging the applicability of the double burden rule must show, through introduction of the transcript of the default proceedings or otherwise, that the custody issue was "considered" in the prior proceeding. See Lynn v. Lynn, 316 So.2d 445 (La. App. 3rd Cir. 1975). Hence, we hold that the double-burden test does not apply here, and we treat this as a review of an original custody determination.
Because of the trial court's distinctly advantageous position for making custody determinations (as recognized by the Court in Fulco, supra), our touchstone of review is whether his discretion was clearly abused in making the award.
Appellant contends that discretion was abused by awarding the custody to the father in disregard of the maternal preference rule and without any showing of unfitness of the mother.
The proper guideline for the trial court in custody determinations is, of course, the welfare and best interests of the children, Fulco, supra. The maternal preference rule is explanatory of, rather than distinct from, this general principle and, in most cases, follows naturally therefrom.
In the instant case, several factors were presented to counter the application of the maternal preference rule:
(1) The children have been living with the father for a period of some five years since the separation;
*588 (2) The father has since remarried and established a stable and salutary home environment;
(3) The mother, unmarried, has since the separation become involved with another married man (though at the time of the hearing had discontinued that relationship), which type of superficial relationship may be attractive to the mother because of her psychological profile.
From a reading of the record in this case, we are impressed with the remarkable relationship between the mother and the children, a relationship that leaves no doubt of the love harbored therein. However, the record also reflects a father eminently qualified and just as devoted to rearing these children. The three young girls are beautiful proof of the efforts, attention, and love of both parents.
This case painfully illustrates the hard choices in custody proceedings. Nevertheless, the trial court's duty was to determine custody, and our duty is to review that determination.
Our thorough review of this record satisfies us that the trial court had a sufficient basis for this result.
Our judicial system imposes the awesome duty on trial judges to decide these custody cases, and to function properly they must have authority and discretion commensurate with that responsibility. There has been no abuse of discretion, and for that reason, the judgment is affirmed at appellant's cost.
AFFIRMED.