388 So.2d 1182 (1980)
Janice Kinchen, wife of Randolph M. HOWES
v.
Randolph M. HOWES.
No. 11313.
Court of Appeal of Louisiana, Fourth Circuit.
September 9, 1980.
Herman & Herman, Russ M. Herman, New Orleans, for plaintiff-appellee.
Satterlee, Mestayer & Freeman, A. D. Freeman, New Orleans, for defendant-appellant.
Before BOUTALL, BARRY and SARTAIN, JJ.
*1183 BARRY, Judge.
This matter is technically before us on a writ of habeas corpus. Disposition of the writ involved a determination of the fitness of each parent to have custody of two minor children. The issue is whether the trial court abused its discretion in granting the writ and continuing custody with the mother.
Subjects of the hearing were Michael (then 7), and Damien (then 5), children of Dr. Randolph M. Howes and Janice Kinchen Howes who were married August 31, 1964. In October 1978 the father moved from the family domicile and both sons remained with their mother. On October 26, 1978 the mother was granted ex parte custody pendente lite when she sued for divorce on adultery. Dr. Howes filed a denial and reconvened for a separation alleging physical and mental abuses. He did not request custody, only visitation. In February, 1979 Mrs. Howes and the children moved to Hammond, Louisiana. Dr. Howes then filed a rule seeking custody of his two sons alleging child abuse and the unfitness of Mrs. Howes. In spite of these serious allegations and for no reason apparent in the record, on March 9, 1979 Dr. Howes agreed to a consent judgment which continued custody of Michael and Damien with their mother. He was granted visitation on alternate weekends and holidays and for one month during each summer.
Following the full month visitation in July, 1979 Dr. Howes refused to return the children to their mother and he filed a rule to change custody. On August 6, 1979, Mrs. Howes filed a contempt rule and then the instant writ of habeas corpus for return of the children in accordance with the prior consent judgment.
A review of the too lengthy transcript shows extensive hearsay and opinion testimony. The announced good intention of the trial judge to hear "all possible evidence" resulted in the inclusion of matters which have no probative value in assessing the relative fitness of each parent for custody or the best interests of the children.
Each spouse leveled a barrage of charges against the other. Dr. Howes alleged in his custody rule that the children had been abused by members of his wife's family, that a twelve year old cousin had engaged in sex play with Damien, that Mrs. Howes' relatives carried weapons, that Mrs. Howes was involved in an adulterous relationship, and that the children did not receive proper nutrition. Most of these allegations were based upon information given by Michael to his father. Further, Dr. Howes asserted physical deterioration of the children and their need for treatment of emotional problems which had developed since the boys were taken to Hammond by their mother.
Mrs. Howes charged Dr. Howes, a plastic surgeon, maintained extended office hours and that his spare time and weekends were spent in and out of town pursuing a career as a country-western singer. Further, Mrs. Howes averred an ongoing adulterous relationship with his nurse during the past 5 years. Other assertions against Dr. Howes included refusing to support the children, involvement in the sale of narcotics, authorship of an unpublished pornographic manuscript, and a violent temper which was evidenced by his shooting Mrs. Howes' brother.[1]
Litigation to terminate the marriage was pending at the time the District Court heard this matter. The amendment[2] to LSA-C.C. Art. 146 became effective during the custody hearing and both counsel stipulated that the custody decree should be governed by Art. 146 as amended:
If there are children of the marriage, whose provisional keeping is claimed by both husband and wife, the suit being yet pending and undecided, it shall be granted to the husband or the wife, in accordance with the best interest of the children. In all cases, the court shall inquire *1184 into the fitness of both the mother and the father and shall award custody to the parent the court finds will in all respects be in accordance with the best interest of the child or children. Such custody hearing may be held in private chambers of the judge.
The Supreme Court set forth guidelines applicable to appellate review of custody cases in Fulco v. Fulco, 254 So.2d 603 (La., 1971) which specified:
(1) Paramount consideration is the welfare of the child.
(2) Parental preference is in favor of the mother when considering a child of tender years.
(3) After a considered judgment of permanent custody based on (1) and (2), the parent seeking change of custody bears a heavy burden of proof.
(4) The trial judge's decision is entitled to great weight on appellate review.
Amended Art. 146 does away with the maternal preference rule and (2) of Fulco no longer applies. Custody is now to be determined according to the best interests of the children after inquiry into the fitness of each parent. There is no legal preference or presumption in favor of either parent.
As mentioned above, an ex parte order was signed granting temporary custody to the mother when this litigation began; shortly thereafter a consent decree was entered into continuing custody with the mother. The record reflects that this is the initial determination of custody by adversary proceedings. For application of (3) of Fulco we have to determine if a "considered judgment" of custody is before us. "Considered" is defined as "deemed, determined, adjudged, reasonably regarded". Black's Law Dictionary 278 (5th Ed. 1979). The First Circuit has held that a considered decree of custody is one which is rendered after a trial of the issue and decision thereon applying pertinent principles of law. Gulino v. Gulino, 303 So.2d 299 (La.App., 1st Cir., 1974); Penton v. Penton, 260 So.2d 5 (La.App., 1st Cir., 1972). Both Gulino and Penton involved consent judgments and were cited with approval in Lemons v. Lemons, 325 So.2d 734 (La.App., 1st Cir., 1976). A consent judgment is not a judicial determination of any litigated right. See 49 C.J.S. Consent § 173. Further, it has been held that a custody judgment by default without evidence of fitness is not a considered decree. Stevens v. Stevens, 340 So.2d 584 (La.App., 1st Cir., 1976).
We conclude the consent judgment on March 9, 1979 is not a "considered judgment" and (3) of Fulco is inapplicable. It is therefore unnecessary to distinguish between or to consider the "heavy burden" requirement of (3) in Fulco, and the "double standard" rule set forth in Decker v. Landry, 80 So.2d 91 (La., 1955). We are constrained to evaluate the facts with the paramount consideration being the welfare of the children under (1) of Fulco.
The District Judge stated in his reasons for judgment on the writ that he did not believe the testimony of lay witnesses called by Dr. Howes. Nor did he give credence to Michael's testimony concerning abuse by Mrs. Howes' family. The trial judge further stated he found unreliable and untrustworthy the denials of Dr. Howes and his nurse that their relationship had always been a strictly professional one and that they have not been sexually intimate either before or after October 28, 1978. He felt testimony from two psychologists was tainted because it was based on subjective conclusions derived from interviews with Michael.
On the question of Mrs. Howes' moral fitness, we deem it appropriate to quote the lower court:
"The court further finds that the sexual relationship between Mrs. Janice Howes and .... (paramour) .... has terminated and that during its existence it did not have any adverse or deleterious effect on the children."
Since this appeal is an effort to revoke custody from the mother and the primary allegation of possible substance was her illicit affair, we look to the record for edification. Mrs. Howes and her paramour admitted *1185 that during March to May, 1979 they were sexually intimate on several occasions. (She testified to three meetings, he testified to five.) The children were not present. Her activities could not be described as "concubinage" since there was no cohabitation. The relationship ended approximately 3 months before trial and there was no evidence that it continued thereafter, nor proof that it had a deleterious effect on the children. If she had engaged in a calculated and continued public course of misconduct in defiance of generally accepted principles it would be regarded as detrimental to the children: we find she did not.
In assessing if a parent's sexual lifestyle is cause for denying or removing custody, we consider whether the behavior was damaging to the children, i. e., if the children were aware of the illicit relationship, whether sex play occurred in their presence, whether the furtive conduct was notorious and brought embarrassment to the children, and what effect the conduct had on the family home life. Generally, infidelity per se does not result in loss of custody. Fulco, supra; Monsour v. Monsour, 347 So.2d 203 (La., 1977); Ingram v. Ingram, 382 So.2d 980 (La.App., 1st Cir., 1980); Coltharp v. Coltharp, 368 So.2d 793 (La.App., 2nd Cir., 1979); Greer v. Greer, 346 So.2d 846 (La.App., 1st Cir., 1977).
"One indiscretion or escapade does not render unfit a custodian who has been granted custody of a child in a court decree.... However, when a court reviews the total circumstances under which the child is living, a judge may find that the custodian has pursued a notorious course of conduct that reveals an utter lack of regard for the moral principles held by most members of society.... Certainly past misconduct forms one of the important considerations in a court's determination of the suitability of the custodian of a child.... Nevertheless the primary consideration in any custody award is the welfare of the child." Monsour v. Monsour, supra, at pp. 204 and 205.
Our courts have changed custody in rare circumstances, generally on facts involving notable deviation from ordinary moral standards. Schexnayder v. Schexnayder, 371 So.2d 769 (La., 1979) (because of the extreme notoriety of the wife's sexual activities). Jurisprudence is to the effect that one act of adultery or even several acts with the same paramour does not necessarily render morally unfit a person otherwise suited for custody. Schexnayder, supra, at p. 772; Parker v. Parker, 304 So.2d 681 (La.App., 3rd Cir., 1974) writ denied 307 So.2d 641 (La., 1975).
The trial judge concluded his reasons for judgment by saying:
"Without delineating and commenting on each and every other piece of evidence and testimony relating to the fitness of each parent to the custody of the children, suffice it to say that upon considering the fitness of each parent and the best interests of the children the Court is of the opinion that Mrs. Janice Howes is the best qualified of the parents to have the custody of the children in that it is in the best interests of the children that she have custody of Damien and Michael Howes."
No purpose would be served in detailing the numerous other charges. Custody decisions should be weighed on the basis of which parent is more fit instead of negatively determining the unfitness of one over the other.
We look to the transcript to determine which parent presented the most convincing positive testimony to evaluate the quality of fitness which would serve the best interests of the children. We are impressed with the testimony of Mrs. Howes' six neighbors and acquaintances who stated that Mrs. Howes maintained a good relationship with her children, did not drink excessively, and other laudatory comments about her home and lifestyle.
The standard of review in custody matters gives great weight to trial court decisions which should be overturned only when there is clear abuse of discretion; (4) of Fulco, supra; Cleeton v. Cleeton, 383 So.2d 1231 (La., 1980).
*1186 We have considered the totality of circumstances presented by this record, the written reasons submitted by the trial judge, the comparative fitness of each parent to have custody, and the predominant question of the best interests of the children. Our paramount concern in custody proceedings is the welfare of the children. Montgomery v. Montgomery, 383 So.2d 1384 (La.App., 4th Cir., 1980). The children's welfare should encompass stability, security and continuity. We are cognizant the boys have lived with and spent most of their time with their mother since birth and following their parents' separation.
This appeal involves a factual determination with wide discretion vested in the trial judge. We feel the evidence supports the conclusion that the mother is better suited to provide a family home for the children. We fail to find any abuse of discretion in the judgment which maintains the writ of habeas corpus directing that Damien Howes and Michael Howes be returned to the custody of Mrs. Janice Kinchen Howes in accordance with the prior consent judgment.
The obvious bitterness between the parents promises continuing problems with the children being the victims of their animosity. This misdirected effort and expense could better serve to provide the needed family environment and parental love which these youngsters deserve.
The judgment of the District Court is affirmed. All costs of this appeal are to be paid by the appellant.
AFFIRMED.
NOTES
[1] No criminal proceeding resulted.
[2] Act 718 of 1979 which amended LSA-C.C. Art. 146 became effective September 7, 1979. The lower court judgment was rendered October 2, 1979.