CHEHARDY, Judge.
Sheila Ockman Davis appeals from a trial court decision of July 27, 1979, granting a change in custody of her minor daughter, Richelle Leigh Landry, from herself to her former husband, Roland J. Landry, Jr. In a previous decision on April 4, 1978, the trial court had awarded Landry a divorce by default and also granted custody of Richelle to Mrs. Davis.
The sole issue in this case is whether the trial court erred in changing custody of Richelle to Landry.
It was established at the trial court that since the time of her separation from Landry, Mrs. Davis cohabited with Robert Cardinal for a period of approximately nine months, and the living arrangements were such that Mrs. Davis shared the apartment bedroom with Cardinal while Richelle slept in the living room. It was also uncontro-verted at trial that Mrs. Davis had cohabited with her present husband, Troy Davis, at the home of Mrs. Davis’ mother from April of 1978 until April of 1979, when the couple was married, and that Richelle also maintained a bedroom in the house during that period.
Although both Mrs. Davis and Landry admitted to having used marijuana, Landry testified he had only done this several times to accommodate his wife’s friends in an effort to hold the marriage together.
*885 Landry also testified that his former wife no longer communicates with him regarding her visitation times with Richelle, but insists that all arrangements be made through Mr. Davis. He also testified that in spite of the fact he had voiced strong objection to his child (who was five years old at the time) being removed from this country to go with her maternal grandmother and her husband to Labuan, Malaysia, Mrs. Davis allowed Richelle to be gone on this trip for a period of five or six weeks. There was also conflicting testimony between the parties and the witnesses regarding whether this trip was originally planned as a summer vacation or an extended stay in that country, possibly as long as a year.
Mrs. Cecile Castleman, Richelle’s maternal grandmother, also said at trial that during the periods Mrs. Davis and Richelle lived with her, she raised Richelle as almost one of her own children and that she did the housework and cooking during these times.
There was expert testimony given at the trial by Dr. C. A. Cowardin, a child psychiatrist, who had interviewed Richelle at her father’s request. On the basis of that interview she concluded the child related equally to four different people: her grandmothers, her mother and her father. She said if a child of less than three years of age were left in a nursery all day, as was evidenced in this case, in spite of the lack of necessity for the mother to work or when she was not working, that this would suggest the mother’s relationship with the child was not a particularly intense one. She also stated if the mother then absented herself in the evenings, leaving the father to care for the child, that her relationship to her father might approach what we classically think of as the mother-child relationship. Dr. Cow-ardin said, moreover, that if a child of Rich-elle’s age had been sent to a foreign country with her grandparents and the separation had been presented as being of an indefinite time period, that anxiety would arise from uncertainty on the child’s part. She also felt that it was not in the child’s best interest not to know when she would see her father, and she believes it creates anxiety on a child’s part to move from one situation or city to another.
Nancy Sims Rumage, a child psychologist, also testified as an expert and had interviewed Richelle on three occasions at the request of her mother. Mrs. Rumage felt Richelle has good, strong feelings toward her mother and said the child wanted to live with her mother but would like to see more of her father. She also felt the trip to Malaysia could have been a very interesting experience for a child like Richelle if handled correctly.
Neither Dr. Cowardin nor Mrs. Rumage could conclude at this point that Mrs. Davis’ living with two different men to whom she was not married would have any adverse effect on Richelle later in life; and both experts advised against the father sharing a bedroom with Richelle, as had previously been the case during his weekend visitations with her in the paternal grandmother’s home.
There was testimony from Mrs. Davis that Richelle was left during the summer of 1978 with Mrs. Castleman and other relatives while he and Mrs. Davis went on trips. Mrs. Davis also said her husband will be transferred from Houma to Hammond and that they had not yet made living arrangements in that city.
In giving his reasons for judgment from the bench, the district court judge referred to the case of Bankston v. Bankston, 355 So.2d 58, 62 (La.App. 2d Cir. 1978), which stated:
“While this case does not involve a previous considered decree of custody and the so-called double burden rule is not applicable, the rationale of cases such as Languirand v. Languirand, 350 So.2d 973 (La.App. 2d Cir. 1977) is applicable. Our law recognizes that changes in custody upset the stable environment of children and for that reason should not be undertaken lightly. In the absence of a finding that the existing custody situation is detrimental to the child or that a change in custody would be more beneficial to the child, a change should not be ordered.”
*886 It has also been established by the courts that the double burden rule is only applicable in a change of custody case where the previous judgment of custody was a considered decree, i. e., there was evidence taken of at least one party’s fitness to have care, custody and control of the children. Languirand v. Languirand, 350 So.2d 973 (La.App. 2d Cir. 1977), and Stevens v. Stevens, 340 So.2d 584 (La.App. 1st Cir. 1976).
An appellate court’s standard of review in custody cases will be found in Schexnayder v. Kincke, 372 So.2d 742, 743 (La.App. 4th Cir. 1979), wherein this court explained:
“The paramount consideration in determining to whom custody should be granted is always the welfare of the children. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); State ex rel. Killman v. Gurley, 354 So.2d 755 (La.App. 4th Cir. 1958). Since the judicial system imposes upon trial judges the duty of deciding child custody cases, the judges must have authority and discretion commensurate with that responsibility. See Stevens v. Stevens, 340 So.2d 584 (La.App. 1st Cir. 1976). The decision must not be disturbed absent a clear abuse of discretion. Gurley, supra, Landry v. Landry, 339 So.2d 360 (La.App. 1st Cir. 1976).”
We share the concerns expressed by the trial judge, who stated:
“ * * * In connection with this matter, the Court is impressed with the testimony of Dr. Cowardin. It seems to me that what she indicated here was along the pattern of a loose relationship between the mother and the child. The present conditions, situation with the mother is unstable, is unlikely to change. We have a situation where the child is going to be moving from place to place. She has been moved and left, and moved and left in various places. And I am usually reluctant to change custody.
* # * * * *
“I find that Mrs. Ockman has-or Mrs.now Mrs. Davis, has a rather loose concept of what is social and moral concepts. She moved in with one guy because he had a place, or he moved in with her because he didn’t have a place to stay. He testified they used marijuana rather frequently.
“Likewise, she moved in with her present husband while she was married and while he was married. He has been married five times. I can’t say that he is going to suddenly pick up and be gone; that this is going to be his dream world.
“Consequently, I think the situation at present is very unstable. That is a detrimental-it has a detrimental effect on the 'child. Likewise, I feel that the situation presumed-not presumed, but shown by actual previous activities by the Landrys indicate that she will be put into a more stable type situation; that she will have a better chance on a long term of getting out and into the world with the better concept.” N
In view of the above and all of the evidence presented in the record we conclude the district court judge acted within his authority and discretion in deciding it was in Richelle’s best interest to live' with her father.
Accordingly, the trial court judgment is affirmed in all respects.

AFFIRMED.