355 So.2d 58 (1978)
James H. BANKSTON, Plaintiff-Appellant,
v.
Nina Faye Miller BANKSTON, a/k/a Mrs. Johnnie Joe Denny, Defendant-Appellee.
No. 13434.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1978.
Rehearing Denied March 1, 1978.
*59 Jack & Jack by Wellborn Jack, Jr., Shreveport, for plaintiff-appellant.
Smitherman, Smitherman, Lunn, Hussey & Chastain by Walter F. Johnson, III, Shreveport, for defendant-appellee.
Before PRICE, HALL and JONES, JJ.
HALL, Judge.
At issue in this case is the custody of the seven-year-old son of the divorced plaintifffather and defendant-mother. Although the child has lived with his father since the parties last separated in 1973, with brief exceptions, the district court found that it would be in the best interest of the child that his custody be awarded to the defendant-mother. The father has appealed from a judgment rendered accordingly. For reasons expressed in this opinion, we reverse and award custody to the father.
In January 1977, plaintiff, a resident of Shreveport, Louisiana, filed suit against defendant, a resident of Randlett, Oklahoma, seeking a divorce on the grounds of living separate and apart for two years and seeking legal custody of the parties' only child, Brian Keith Bankston, who was born in February 1970. Defendant filed a peremptory exception of res judicata pleading a judgment of divorce rendered in Missouri in 1973 as a bar to plaintiff's action for divorce. Defendant also answered, praying that plaintiff's demand for custody be denied and that defendant be awarded the custody of the child.
After trial, the district court sustained the exception of res judicata, dismissed plaintiff's suit for a divorce, and awarded custody of the child to the defendant-mother. *60 On appeal the plaintiff does not question the court's judgment in connection with the divorce. The sole issue on appeal is custody.
Plaintiff and defendant were married in 1967. Defendant had been married twice previously; one daughter (presently 19 or 20) was born of the first marriage and two daughters (presently 15 and 17) were born of the second marriage. Brian was born in February 1970.
In June 1971, the parties separated and were subsequently divorced in September of that year. Although the mother was given legal custody of the son the father had actual custody until June 1972, when the parties remarried. Defendant testified she remarried plaintiff only to regain possession of the child, not because of any love for him.
In early August 1973, plaintiff left defendant at her request. In late August he returned to the town in Missouri where they had lived together to get the child. Plaintiff drove away with the child in his pickup truck and defendant was injured while trying to stop him. Following this incident defendant filed charges of assault with intent to kill against plaintiff.
In early September 1973, plaintiff moved with the child to Sherman, Texas. Defendant filed suit in Missouri for a divorce and custody of the child. Plaintiff was never actually served or notified of the divorce and custody proceeding; constructive service being by publication. A divorce and custody judgment was rendered in favor of defendant by the Missouri court in December 1973.[1] The wife sought to enforce the custody judgment in January 1974, by filing a writ of habeas corpus in the Missouri court which was served on plaintiff when he was temporarily in Missouri to appear at a preliminary hearing on the August assault charges. When plaintiff failed to produce the child in response to the writ he was found to be in criminal contempt of the court.
In May 1974, defendant moved to Oklahoma with her daughters and remarried her second husband. In March 1975, defendant went to Sherman, Texas, took her son from a babysitter and returned with him to Oklahoma. Plaintiff sent the mother's husband a letter indicating his willingness to pay $1,000 for return of his son to him. Plaintiff hired a private detective firm and paid them $300 to try to secure the return of his son. About this time, in May or June 1975, a young man armed with a gun forced his way into defendant's home and threatened to kill those present if the son was not released. Defendant's husband, with the use of a gun, detained the young man who was arrested and prosecuted. Plaintiff denied any knowledge of the young man or the use of a gun and testified his instructions to the private investigators were to secure the return of the son without hurting anyone.
In June 1975, plaintiff, with the help of two men to whom he paid $1,000, took the child from a parking lot while he was with one of the mother's daughters. In July, plaintiff moved with his son to Shreveport where they have lived together until the present time. The instant suit was filed in January 1977, and judgment awarding custody to the mother was rendered in June.
Twelve witnesses, including friends, neighbors, business associates, the child's teacher and a psychologist, testified on behalf of the plaintiff. The evidence establishes that he is a good provider, good cook and housekeeper, an interested parent and the child is happy, healthy, well behaved, well adjusted and intelligent. Father and son engage in many activities together such as boating, fishing, riding horses, cutting the lawn and traveling together on the father's business trips. The child is presently *61 attending a private christian school in Shreveport and has great academic potential. The father, a 49-year-old furniture salesman who earns about $2,800 per month, travels a route which he completes in the afternoon and he then picks up his son after school almost everyday. Father and son have recently moved to a house which has two bedrooms, two baths, living room, dining room, den and kitchen and is situated on three acres. The trial court found:
"Plaintiff presented some 10 witnesses. . . people with whom he worked, neighbors, people with whom he did business, and the teacher of the first grade of the school attended by the child, all of which were most complimentary of the child. A clinical psychologist who had examined the child on two occasions testified that he was developing normally, emotionally and otherwise."
At the time of trial the 38-year-old mother was employed as a cook in a restaurant in Randlett, earning about $400 per month. The evidence establishes she is a good mother, provider, cook, housekeeper and disciplinarian. Her two teenage daughters live with her in a house which has two bedrooms, one bath, living and kitchen-dining area. The house is located on four lots and is close to the school which the son would attend. The town where she lives has a population of approximately 600. All children attend a consolidated school which provides classes from the first grade through high school and appears to provide students with an adequate education. Defendant's two daughters are A and B students and her oldest daughter attends college. School and church groups provide athletic programs for the children. It appears the educational, religious and athletic opportunities for the child in Shreveport and in Oklahoma are substantially the same. Defendant is separated from her present husband who appears to be a good, hardworking man, but who has a drinking problem. The wife testified she does not plan to divorce him but will not take him back unless he quits drinking and starts going to church. The husband lives in the same town, visits his wife's daughters weekly, and provides some financial support for them. The trial court found there was no evidence of defendant being morally unfit to have custody of the child, was very much impressed with the appearance and demeanor of the daughters who testified, and found the evidence presented by defendant's witnesses to be most complimentary of her character and her ability to care for her children.
The written opinion of the learned trial judge is devoted in large part to a review of the conduct of plaintiff which reflects a contempt and disregard for legal process. The trial court found:
"While the plaintiff has had physical possession of the child since June of 1975 and from the evidence presented, he has been a good provider and good father, he has obtained possession of the child on at least two occasions by violence and has never before sought possession legally. He has frustrated due process of law in Missouri by failure to produce the child when served with a Writ of Habeas Corpus."
In view of the trial court's finding that plaintiff has been a good provider and a good father and that the mother was also suitable to have custody, it seems evident from the court's opinion that the consideration which tipped the scales in favor of the mother in the trial court's judgment was the father's demonstrated contempt for legal process throughout the years of conflict between him and the mother over custody of the child. The trial court may have also been influenced by the maternal preference rule.
The father's conduct in the respects noted is one factor properly considered in determining which parent should have custody in the best interest of the child; not as a matter of punishment to the father, but as a matter bearing on his suitability from the standpoint of morals and character. It should not be overlooked, however, that the mother was also guilty of similar conduct on at least one occasion when she took the child from a babysitter in Texas.
*62 Likewise, the presumption that it is in the best interest of a small child to be in the custody of his mother is a factor to be considered in any custody case. The rebuttable presumption of the maternal preference rule has little applicability or weight in this case, however, for the reason that the child has been away from the mother and in the father's actual custody during most of his young life and continuously for the past two or more years. Brackman v. Brackman, 322 So.2d 314 (La.App. 2d Cir. 1975).
In considering the best interest of the child in this case, the overriding consideration in our judgment is that the child is happy, well adjusted and developing normally in his present close relationship with his father and that a change in custody would undoubtedly upset the stable environment of the child.
While this case does not involve a previous considered decree of custody and the so-called double burden rule is not applicable, the rationale of cases such as Languirand v. Languirand, 350 So.2d 973 (La.App. 2d Cir. 1977) is applicable. Our law recognizes that changes in custody upset the stable environment of children and for that reason should not be undertaken lightly. In the absence of a finding that the existing custody situation is detrimental to the child or that a change in custody would be more beneficial to the child, a change should not be ordered.
While the father here has had actual custody rather than custody by a considered decree, the traumatic effect of changing the stable environment and wholesome lifestyle of this child is not going to be in the slightest diminished because the child has not been in the custody of his father under a considered decree. We believe the trial court's decision overlooked or failed to give appropriate weight to this consideration and thereby does not serve the child's best interest, which will be better served by allowing him to remain in the stable, wholesome environment where he has been for more than two years.
The custody of a child living in a good situation with a suitable parent should remain unchanged where other controlling legal principles do not necessarily dictate that a change be made.
Other factors weighing against a change are the mother's unsettled situation with her present husband, some degree of instability on the part of the mother demonstrated by her three marriages and several divorces and remarriages, and an overcrowded situation in her home if the son were to live there with his mother and much older halfsisters.
The judgment of the district court, insofar as custody is concerned, is reversed and set aside and judgment is rendered in favor of plaintiff, James H. Bankston, and against defendant, Nina Faye Miller Bankston, granting the permanent care, custody and control of the minor, Brian Keith Bankston, to the said James H. Bankston.
Reversed and rendered.
NOTES
[1] Although the Missouri court had status jurisdiction to render the judgment of divorce, it did not have jurisdiction to render a valid custody judgment, since the father and the child were not domiciled in Missouri and the father was not served with process in that proceeding. The Missouri child custody judgment is not entitled to full faith and credit in Louisiana. In any event, the Louisiana court has jurisdiction of the present custody proceeding and the power to modify any previous custody judgment.