JONES, Judge.
Defendant-mother appeals a judgment granting custody of their four-year-old son to plaintiff-father.
Custody was granted the mother, with recognition of the father’s visitation privileges when the separation was ordered in 1974 and when the divorce was ordered in December, 1975.
In November, 1974, after the separation judgment, defendant and her son moved from her parents’ home to a one bedroom *268 apartment of a girl friend who was separated in fact from her husband. During the three months defendant lived in this West Monroe apartment she became intimately acquainted with her first paramour, a college student. This young man stayed at the apartment with defendant, her son, and her roommate. Defendant’s roommate testified that defendant had sexual relations with the student in the bedroom where the young child was sleeping. Defendant denies the child was ever in the room but she did not deny her illicit relationship. The roommate testified that defendant and this same man were in the bedroom together at a Christmas party. Defendant explains she was ill and the young man merely came in to comfort her and “hold her hand”.
In February 1975 defendant and her son returned to live with her parents where they stayed until January, 1976. Defendant was employed during this time by a local retail store and then by a Monroe law firm.
In February 1976 defendant moved with her son to Baton Rouge where they shared an apartment with two other girls before obtaining an apartment of her own. Defendant worked for four different employers during her nine month stay in Baton Rouge: a law firm for two months, an insurance company for one month, a gas station as a bookkeeper for three months, and a retail store for two months.
In the summer of 1976 the son spent an extended five week vacation with his paternal grandparents and his father. During the child’s absence defendant allowed a second paramour to move into her apartment where they too, engaged in sexual relations. When the child’s return was imminent defendant caused her paramour to move into his own apartment. After the son’s return from his summer vacation, defendant and her paramour frequently saw each other and smoked marijuana but not in the child’s presence. Defendant admitted the young child would some times momentarily awake from his sleep while the pot-smoking was going on and would be exposed to the activity to that limited extent.
Defendant returned to Monroe in November, 1976 to live with her parents. She secured employment with Northeast Louisiana University where she worked for six months. At the time of trial she was employed as a Kelly girl.
In Monroe defendant continued to use marijuana occasionally (once a week) outside the child’s presence. After she and her third paramour, now her husband, became “officially engaged” in February, 1977, she discontinued using marijuana because he disapproved. Defendant and her third paramour met in early 1977. They decided to have a trial run of living together prior to actual marriage. They wanted to assure each other that the marriage would work and that the paramour and the child could adjust to one another. They rented a two bedroom house in West Monroe where they lived with the young boy. Defendant admitted periodical sexual relations with her paramour but denied any activity in the child’s presence.
Defendant and her husband testified they married on Saturday, May 21, five days after defendant was served with the father’s change of custody papers on the preceding Monday. The rule served on defendant on Monday, May 16th is not in the record. The judgment appealed from was rendered on a custody rule filed June 6th and served on defendant June 10. Defendant and her new husband admitted that the service of the first rule and the financial burden involved in litigating the custody change prompted them to marry a few months before they had intended.
Plaintiff, a second lieutenant in the United States Army, remarried in December, 1976. He resides with his wife in a nice mobile home near Ft. Polk, where he is stationed. They have no children of their own and his present wife is unemployed. Before his second marriage plaintiff was stationed at several army posts in Kentucky, Georgia and Maryland. Plaintiff has always supported his son financially and has displayed sincere love and affection for his child. He and his parents have exer *269 cised the visitation rights awarded him in the prior judgments. Since plaintiff and his wife moved to Ft. Polk, the frequency of his son’s visits has increased.
The trial judge stated he considered the testimony of all witnesses, weighed their credibility, and determined it was in the best interests of the child at this time to be placed with the father. However, the trial judge failed to further articulate his reasons for the judgment.
The issue is does the mother’s prior conduct reflect a deficit in her basic moral character and therefore an inability to properly raise a young child.
The record does not show whether the initial custody award to the mother was a considered decree, made in a contested posture, or whether it was a consent decree. Regardless of whether the decree was considered or consent, where the child has been living with his mother for almost three years, the father has a heavy burden of proving that the child’s continued custody with the mother would be detrimental to the child’s welfare and best interest in order to justify a change in custody. Bankston v. Bankston, 355 So.2d 58 (La.App., 2d Cir. 1978).
There is no significant evidence to establish the mother failed to meet the physical needs of her son. The evidence proves the mother has provided her son with food, clothing, and shelter, and she is loving and attentive to the child. The child has developed a normal personality while living with his mother. The relationship between the child and his stepfather is satisfactory.
The evidence establishes the father will provide his son with food, clothing, and a nice home; that he has always shared a close relationship with his son and that his new wife and child adjust well to each other. There is no evidence indicating the father or stepmother is guilty of any immoral conduct.
To deprive the mother of custody the lower court must necessarily have found the child’s ethical and moral needs were not being met by the mother.
One indiscretion or escapade with the same paramour does not render unfit the parent who has been judicially granted custody of the child. Tuggle v. Tuggle, 235 So.2d 166 (La.App., 2d Cir. 1970) and Monsour v. Monsour, 347 So.2d 203 (La.1977). If, under the totality of circumstances, the mother has pursued a notorious course of conduct that reveals an utter disregard for the moral principles held by society, then the mother may be held to be unfit to retain custody. Monsour, supra.
The law is well established that the award of custody is to always be made with the best interests of the child receiving prime consideration. Custody cannot be removed from one parent as a form of punishment for prior misconduct of the custodial parent. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971). However, past misconduct forms an important consideration in determining the present suitability of a parent seeking to retain custody of a child. Borras v. Falgoust, 285 So.2d 583 (La.App., 4th Cir. 1973).
The record establishes since defendant’s separation she has moved in and out of her parents’ home on three occasions and has lived in at least four other places, all on less than a permanent basis. The record does not establish the places where the child has lived were less than desirable or unwholesome. While her numerous changes of employment and places of residence do not in themselves necessarily reflect an inability to care for the child, they do tend to establish some instability in the mother.
The plaintiff has engaged in a pattern of sexual activities with three separate paramours. One of these affairs occurred when she was only judicially separated from her husband. The evidence tends to establish that she engaged in sex with her first paramour on at least one occasion while the child was in the bedroom and that the child lived in the home with her and the third paramour three months prior to their marriage. The mother smoked marijuana according to her own admissions for approximately one year under circumstances where *270 the child could have been exposed to the activities. She stopped only a few months prior to institution of this litigation.
The trial court must necessarily have concluded: (a) defendant had engaged in a pattern of promiscuous conduct which could not be characterized as one indiscretion of escapade; (b) her past activities and conduct established her total lack of moral responsibility and acceptance of the fundamental mores of our society; and (c) the defendant could not in the future provide moral guidance and character training essential to the best interests and welfare of her son as he grows and develops. The record supports the lower court’s finding that continuing custody with the mother would be detrimental to the child and that it is in the child’s best interests that he should be placed in the custody of his father.
The trial court’s much discretion in determining custody must be given great weight by an appellate court. This discretion will not be disturbed on appeal in the absence of a clear showing of abuse. Monsour v. Monsour, supra.
For reasons assigned, the judgment is affirmed at appellant’s cost.