368 So.2d 793 (1979)
Jack A. COLTHARP, Plaintiff-Appellee,
v.
Barbara H. COLTHARP, Defendant-Appellant.
No. 13796.
Court of Appeal of Louisiana, Second Circuit.
February 20, 1979.
Rehearing Denied March 28, 1979.
Writ Refused May 4, 1979.
*794 Guerriero & Placke by Allen L. Placke, Monroe, for defendant-appellant.
Lancaster, Baxter & Seale by Michael Lancaster, Jr., Tallulah, for plaintiff-appellee.
Before PRICE, HALL and JONES, JJ.
En Banc. Rehearing Denied March 28, 1979.
JONES, Judge.
Appellant, mother of two sons age 6 and 8, appeals a judgment continuing the custody of the two boys with their father, appellant's former husband. We affirm.
Appellant abandoned the matrimonial domicile in rural Madison Parish, her husband and her two sons in April 1977. Appellee obtained from the appellant a separation of bed and board and custody of the two sons in a default judgment rendered May 26, 1977. On May 30, 1978 appellee sued appellant for a final divorce and for permanent custody of his two sons and in these proceedings, appellant reconvened for custody of her two sons. Appellee was granted a divorce on July 18th, at which time the custody hearing was postponed until August 11th, on which date appellee was awarded the permanent custody of his two sons.
At the time of the custody hearing, the two boys had been living with their father for approximately 16 months and they were well-adjusted, disciplined, happy children for whom appellee provided a comfortable rural home, food and clothing, religious instruction and recreational activities in the form of little league baseball and fishing trips. The boys and their father enjoyed a good relationship with each other.
Appellee, immediately after the divorce was rendered, married his girl friend who had been living with him and his two sons for the preceding 10 months. Appellee's present wife adequately supervises and cares for the boys and enjoys a satisfactory relationship with them.
Appellant had a hysterectomy a short time prior to her separation from her family, but had sufficiently recuperated from this surgery prior to the separation to be able to drive to her employment as a cashier in a store in an adjacent community. Prior to the hysterectomy, she had been in poor health, suffered from depression and had attempted suicide. Upon her separation from her family, she moved to Ouachita Parish where within a month she secured *795 employment. She visited with her children frequently during the intervening year, but made no attempt to regain their custody until the suit for divorce was filed by her husband. During this period between the separation and the custody hearing, appellant lived in 6 different apartments and held 5 different jobs. She married a draftsman a few days before the custody hearing and she and her husband testified that she no longer needed to work.
Appellant's assignments of error are: (1) the trial court applied the double burden rule of proof to appellant's change of custody demand when the separation of bed and board custody award was not a considered decree (2) the trial court erred in finding plaintiff had not established that she was capable of providing a proper environment and in failing to grant custody of the children to appellant and (3) the trial court erred in failing to find the appellee morally unfit and unsuitable for custody of the children.
The double burden rule as enunciated in Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955) and Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), provides:
When the trial court has made a considered decree of permanent custody the party seeking the change must prove the continuation of the present custody is deleterious to the children to justify removing them from the environment to which they are accustomed and further must show that the new environment is suitable.
The trial court gave the following reasons for leaving the custody of the two boys with their father:
"I am going to let the children stay where they are. I don't think you have shown me enough reason to change and I think that's what the law still is that they're in a stable environment. She hasn't proven a stable environment. She may have gone into one but that I don't know and I think it's bad switching the children around. She let them stay for over a year and then just came within on a reconventional demand to get them."
We view the reasons of the trial judge to establish that she was applying the rule that it is to the best interest of the children to leave them in a stable environment to which they have become accustomed, and that it is not generally in their best interest to change the custody in absence of some serious reason to do so. This approach is in line with the rule that:
"The paramount consideration in determining to whom custody should be granted is always the welfare of the children."
Fulco v. Fulco, supra, which jurisprudential rule is now clearly expressed in C.C. Article 157 following its 1977 amendment wherein the first paragraph reads as follows:
"In all cases of separation and divorce, permanent custody of the child or children shall be granted to the husband or the wife in accordance with the best interest of the child or children."
In the decision of Bankston v. Bankston, 355 So.2d 58 (La.App. 2d Cir. 1978) we retained custody in a father who had prior thereto de facto custody for a considerable length of time, but who did not have custody by a considered decree, and therein said:
"Our law recognizes that changes in custody upset the stable environment of children and for that reason should not be undertaken lightly." p. 62.
In that case in rejecting a mother's demand for a change of custody we further said:
"While the father here has had actual custody rather than custody by a considered decree, the traumatic effect of changing the stable environment and wholesome lifestyle of this child is not going to be in the slightest diminished because the child has not been in the custody of his father under a considered decree." p. 62.
The trial court stressed the fact that the appellant was just going into a situation which appeared to be stable and by stressing this point, the trial court was pointing out that numerous changes by appellant in the preceding year in places of residence and places of employment were not indicative of a stable situation which is essential to the welfare of children.
*796 We consider this assignment of error without merit. The trial judge properly evaluated the stability of the existing satisfactory custodial situation of the two young boys and considered it to be in their best interest to leave the custody unchanged rather than to uproot them from their stable situation in their country home with their father and step-mother and place them with their mother who had just moved into an apartment with her new husband.
Appellant urges the trial court erred in failing to apply the maternal preference rule and based upon it award her the children. This rule as expressed in Fulco v. Fulco, supra, is as follows:
"The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable . . ." p. 605.
We find the maternal preference rule inapplicable because it was designed to apply to initial custody determinations following the separation of the spouses. The underlying basis for the rule recognizes that principally the mother exercised the custodial functions over the child of tender age in the normal household where the child lived with his mother and father. The rule was designed to continue the custody of these young children with the mother after the separation of the spouses because it was to the best interest of these children that they remain subject to the direct custody and control of their mother who had cared for them prior to the separation. It may be that C.C. Article 157, supra, could be construed to have legislatively eliminated the maternal preference rule since it provides that the child should be awarded to the husband or wife in accordance with the best interest of the children. The amendment to the Article probably makes no change in the law since the maternal preference rule was always based upon the notion that it was to the best interest of a child of young and tender age to be placed in the custody of his mother at the time of the initial custody determination. The rule has no application to this situation where the father has been exercising actual custody over these two young boys for 16 months prior to this custody hearing, and under these circumstances, the trial court was not required to give appellant any preference or presume that she was entitled to custody of these children. Brackman v. Brackman, 322 So.2d 314 (La.App. 2d Cir. 1975).
Appellant's last assignment of error is that the trial court should have found the father morally unfit and unsuitable for the custody of the children. This assignment of error is based upon the appellee having resided in the same home with his present wife and his two children for some 10 months without being married to her. Appellee testified he needed the assistance of his girl friend to help him care for the two children while he worked and that he intended to marry her as soon as he could after his divorce from appellant. While this conduct cannot be condoned, the father has married the lady, they are providing the children with a good home and it is not shown that either the father or his present wife is unfit.
In the decision of Monsour v. Monsour, 339 So.2d 488 (La.App. 2d Cir. 1976) a mother lived with her boy friend for four months in the apartment with her young son and she married her boy friend after the father of the child filed suit for custody. The supreme court reversed this court which had removed the custody of the boy from the mother, based on her immorality, and placed it with the father. Monsour v. Monsour, 347 So.2d 203 (La.1977). The supreme court held the mother had reformed by marrying her paramour and the trial court was correct in retaining custody with her. The trial court in the instant case, no doubt considered this father had purged himself of immorality by marrying his girl friend as soon as he secured the divorce from appellant.
The court in Monsour v. Monsour, supra, stressed the rule that a trial court's determination *797 should not be disturbed in absence of a clear showing of abuse:
[the trial judge] "is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof." p. 205.
We find no abuse of the trial court's discretion as the record fully supports the trial court's determination that it is to the best interest of appellant's children that they remain in the custody of their father.
AFFIRMED at appellant's cost.