BARRY, Judge.
This is an expedited appeal[1] by a father from a judgment in a pending separation suit which awarded custody of his 2-year old daughter to the mother. The father argues the lower court erred because the mother is physically incapable and emotionally unstable due to severe anorexia nervo-sa.
On July 22, 1982, Connie Spohrer, the mother, sued William Spohrer for a legal separation, and she also filed a rule for custody of their child, Heather Spohrer, who was born on September 23, 1980. The father had custody of Heather when suit was filed which custody had been continuous and exclusive for nine months beginning in January, 1982. Mr. Spohrer an *1351 swered his wife’s petition, reconvened for a legal separation, and asked that his custody be maintained.
The custody hearing was held on September 10,1982, and judgment was rendered on September 15, 1982, in favor of the mother which removed Heather from her father’s de facto custody. The father filed a Motion for a New Trial or alternatively for reargument which was denied; then he immediately applied to this Court for supervisory writs which were refused. He then filed this appeal requesting disposition be expedited to minimize interruption of the child’s living arrangements.
The trial court found that the parties’ child (approximately two (2) years of age) had “lived with the father for the last eight or nine months.” The court concluded that even though the mother “was ravaged” by the disease of anorexia nervosa, she could tend to the needs of the child with the help of her mother, and removed custody from the father.
The Trial Judge’s Reasons do not mention the “best interests of the child” or the impact on the child of changing the father’s de facto custody. The court did acknowledge the serious nature of the mother’s illness, including the high mortality rate associated with anorexia patients. The Reasons emphasize and lean on the availability of the maternal grandmother “at all times to help care for the child, if the need arises.” The custody decree, however, is not conditioned upon the mother’s continued residence with her mother, and in fact awards $430 per month alimony and child support which increases the possibility Mrs. Spohrer will seek a separate domicile for herself and Heather.
The lower court also cited the “advantage” to the child in living with her mother and maternal grandparents, instead of with the father who took the child to the paternal grandparents’ home on weekdays during his working hours.[2] Mrs. Spohrer, however, testified she plans to try to return to work whenever she is capable. It seems, therefore, that the “advantage” to the child of her mother’s constant presence will continue only so long as the mother is psychologically and physically unfit to hold a job. We find this criteria of dubious benefit to the child, while penalizing the father for his ability and need to maintain gainful employment.
At the hearing two psychiatrists who treated the child’s mother testified she is seriously ill and needs intensive psychotherapy. She has suffered from anorexia ner-vosa since 1978 and throughout her three year marriage to the father and has been hospitalized for this condition at least three times during their marriage. Only a few months before the custody hearing, Mrs. Spohrer was hospitalized continuously from January through May of 1982, first at West Jefferson Hospital and thereafter at East Louisiana State Hospital in Jackson. Her condition is described as a severe personality disturbance which manifests itself in a compulsive syndrome of dieting, over-eating, then self-induced vomiting. Underlying this obsessive behavior are unresolved anxieties, fears, guilt feelings and depression. Despite evidence that her condition is life-threatening, she discontinued all psychiatric treatment, although she sees an unlicensed therapist once a week and in a group session every two weeks.
Mrs. Spohrer is 5' 8" tall. During one of her hospitalizations her weight dropped to 62 pounds and she refused nasal tube feedings until warned her life was in serious danger due to the excessive weight loss. Although her weight increased to nearly 100 pounds (still a pathetic figure) during hospitalization in the spring of 1982, by trial in September her weight dropped again to between 65 and 76 pounds. The Trial Judge, as well as her psychiatrists and other witnesses, noted Mrs. Spohrer’s appearance at the hearing indicated she was “ravaged by this disease.” Both psychiatrists testified Mrs. Spohrer’s condition had deteriorated since they last treated her. Somehow the Trial Judge felt “her emotional stability certainly appeared acceptance [sic] to this court.”
*1352 Dr. McGregor, who saw Mrs. Spohrer 29 times from March 21,1981 through July 22, 1982 and testified as her witness, acknowledged she has an obsessive personality disorder and “if she doesn’t get successful treatment for this [condition], she will be life-endangering.” When asked if Mrs. Spohrer’s condition would be harmful or dangerous to her child, Dr. McGregor responded he had insufficient data to answer. He opined that her condition would “not necessarily” be detrimental to her ability to care for her child, feeling that “It could go either way. The reason being that some people who don’t take very good care of themselves sometimes take excellent care of other people.” (“Sometimes” is a dangerous risk.) Dr. McGregor believed that, “in general, a child this age, if it cannot have both parents, needs the mother more than the father, even if the mother has serious psychological problems, as long as they do not prevent her from mothering the child adequately.” This indicates the possible physical ability to “mother”, but totally ignores the mother’s “serious psychological problems.” He candidly admitted he did not know whether Mrs. Spohrer’s illness would impair her ability to care for the child’s needs.
In contrast to Dr. McGregor’s uncertainty, Dr.' McKenzie, who treated Mrs. Spohrer during her most recent hospitalization, testified her “condition would certainly impair the ability” to care for her child. Dr. McKenzie stressed Mrs. Spohrer’s preoccupation with her own problems and the ritual of over-eating, vomiting, and starving would leave her with no energy to care for this healthy, thirty-one pound 2-year old.
There was conflicting testimony as to the quality of Mrs. Spohrer’s mothering during the child’s infancy while the parties lived together. Mrs. Spohrer said she got up every morning and took care of Heather while her husband was at work. She said she fed, bathed, changed, and dressed the baby and ran the house. Mr. Spohrer testified he primarily took care of the child since birth due to his wife’s disability. He cited occasions when his wife was too weak to get out of bed without assistance and her inability to pick up the baby. He said he changed the child’s sheets every morning and fed her at night while the mother was alternately eating and vomiting. According to Mr. Spohrer, his wife left home several hours every night and he took care of the baby and cleaned the house.
Mr. Spohrer had custody of Heather during his wife’s lengthy hospitalization from January through May of 1982, (which included incarceration in Jackson) and continued custody in the couple’s apartment after the spouses separated in June until the custody hearing on September 10, 1982. During those nine months the paternal grandparents helped care for the child while her father was at work, an arrangement which they expressly agreed to continue. The Trial Judge stated he was impressed with the paternal grandmother as well as the maternal grandmother.
Mr. Spohrer says his daughter is a happy, well-adjusted 2-year old who has been under his care all of her life. He fears for her physical and psychological well-being if she is left with the mother, particularly if Mrs. Spohrer removes herself and Heather from the maternal grandparents’ home. Dr. McKenzie corroborated Mr. Spohrer’s anxieties concerning the effect of his wife’s condition and on the trauma involved in moving Heather from her father’s custody.
The issue is whether the trial court abused its discretion in ordering the father to relinquish custody to the mother. We recognize the trial court has wide discretion in custody cases. Bagents v. Bagents, 419 So.2d 460 (La.1982). This deference to the Trial Judge’s factual conclusions, however, presupposes application of the proper legal standard for the custody determination. At the time of the trial herein, LSA-C.C. Arts. 146 and 157 provided that custody of a child “shall be granted to the husband or wife ... in accordance with the best interest of the child .... No preference shall be given on the basis of the sex of the parent in cases where custody is awarded to only one parent.” Our jurisprudence recognizes that Art. 157 contemplates *1353 a comparison between the parents alone to determine which parent can provide the best home for their child. A parent’s right to custody primes any claim by a third party (such as a grandparent), unless the party seeking custody is unfit. Wood v. Beard, 290 So.2d 675 (La.1974); Hall v. Hall, 367 So.2d 162 (La.App. 2d Cir.1979). Our case law recognizes that a change in custody is traumatic for a child and should not be lightly undertaken, even when the original custody is de facto rather than by judicial decree. Coltharp v. Coltharp, 368 So.2d 793 (La.App. 2d Cir.1979); Bankston v. Bankston, 355 So.2d 58 (La.App. 2d Cir.1978).
Our review of the uncontroverted testimony regarding the mother’s unstable emotional condition and its life-threatening physical symptoms, in contrast to the father’s demonstrated desire and ability to provide a stable, wholesome home for the child, convinces us the Trial Judge’s decision is erroneous and was influenced by the obsolete “maternal preference”, coupled with a grand-maternal preference. The old maternal preference rule imposed upon a father seeking custody the burden of proving the mother was mentally, physically, or morally unfit to care for her child. In abrogating that criterion, the legislature explicitly provided that no preference should be given to a parent on the basis of her sex. LSA-C.C. Art. 157. While there are a number of cases holding that it is usually in the best interest of a young child to be with the mother, [see Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Whatley v. Whatley, 312 So.2d 149 (La.App. 1st Cir. 1975)], such a presumption is no longer applicable. In Hegan v. Hegan, 367 So.2d 147 (La.App. 2d Cir.1979), the court recognized that, as stated in Brackman v. Brackman, 322 So.2d 314 (La.App.2d Cir.1975):
[0]ne of the many factors to consider in determining the best interest of children is the desire to “continue them in the care of the parent who, in a normal situation, has provided the degree of continuous care and affection which creates such a close bond that it would be harmful to the children to alter that relationship by granting custody to the father.”
The court in Hegan qualified this statement, however, by holding that:
[I]f such a relationship exists between a mother and a child, it should be considered. However, we also hold that the consideration given to this particular factor should not be so great as to only be overcome by a showing on the part of the father that the mother is unfit or unstable. Furthermore, as in this case, this same factor could also weigh in favor of the father.
The mother in Hegan suffered from epilepsy and severe depression which required constant treatment and medication. Like Mrs. Spohrer, the mother in Hegan had been hospitalized on various occasions for psychiatric treatment during which time the father cared for the child. The father in Hegan cared for the child for over a year after the parents’ separation. Despite evidence that the mother was coping adequately with her depression and her seizures were controlled by medication, the court in Hegan refused to award custody to the mother. Mrs. Spohrer has not coped with her problem and there is no evidence it is under control.
Similarly, the mother in Coltharp suffered from depression and suicidal urges, but apparently recovered by the time of the hearing. The father had exercised actual custody over the children for sixteen months preceding the hearing and the court awarded him custody, citing the traumatic effect of changing a child’s environment.
These facts sub judice, when evaluated solely in light of the best interests of the child, lead us inescapably to the conclusion that the father is not only better equipped, but the only parent equipped to care for the child. Dr. McGregor was uncertain if the mother could adequately care for Heather, but Dr. McKenzie was certain the mother’s ability to care for the child was seriously impaired. Evidence of the father’s stable mental and physical health, his proven ability to care for Heather, and his love for the child is undisputed. Even if the mother *1354 was capable of physically caring for her child, which is questionable, her distorted self-image, mental instability, and bizarre habits would certainly have an adverse impact on the psychological development of this child. We have recognized that a child learns by example, Hilderbrand v. Hilderbrand, 391 So.2d 577 (La.App. 4th Cir.1980), and we are satisfied Mr. Spohrer can provide a normal, healthy psychological role model.
Dr. McKenzie testified the effect of changing custody (at the time of the hearing) from the father to the mother would be especially devastating. Our courts have recognized that stability of a child’s environment is so crucial that even de facto custody (as here) should not be altered without compelling reasons. Coltharp v. Coltharp, supra; Bankston v. Bankston, supra. Under these unfortunate circumstances, we find the mother is physically unfit and emotionally unstable to maintain a proper custodial relationship. The father has provided continuous care and affection and it is in this child’s best interests that she continue in his care and custody.
ACCORDINGLY, the judgment of the district court awarding custody of Heather Spohrer to her mother is reversed and set aside. Judgment is hereby entered in favor of William T. Spohrer awarding him custody of Heather Spohrer subject to reasonable visitation by Connie K. Spohrer to be agreed upon by the parties. This judgment is effective upon rendition.
REVERSED AND SET ASIDE.
GULOTTA, J., dissenting with written reasons.
GARRISON, J., dissenting for the reasons assigned by GULOTTA, J.

. The three judge panel heard argument on March 3, 1983 and this five judge court heard argument on March 9, 1983.

. The father is employed as a controller and earns approximately $23,000 a year.